PEOPLE v NIXON

Docket No. 71862. Argued June 7, 1984 (Calendar No. 8).—Decided
    December 28, 1984. Released January 29, 1985.

Richard M. Nixon was convicted by a jury in the Van Buren
    Circuit Court, Meyer Warshawsky, J., of two counts of first-
    degree murder. The Court of Appeals, T. M. Burns, P.J., and
    R. B. Burns and M. J. Kelly, JJ., affirmed (Docket No. 52685).
    The Supreme Court, in lieu of granting leave to appeal, re-
    manded the case to the Court of Appeals for further considera-
    tion in light of the holding in *People v Gonzales,* 415 Mich 615
    (1982), that hypnosis is not a reliable means of enhancing
    memory and that testimony by witnesses whose memories have
    been refreshed by hypnosis denies a defendant the right to
    effective cross-examination and must be excluded in criminal
    cases. On remand, the Court of Appeals reversed and remanded
    for a new trial (Docket No. 70299). The people appeal.

    In an opinion by Justice Cavanagh, joined by Chief Justice
    Williams and Justices Ryan, Brickley, and Boyle, the Supreme
    Court *held:*

    The mere fact that a witness has been hypnotized does not
    automatically preclude effective cross-examination. The witness
    may testify to facts recalled and related prior to being hypno-
    tized. In order to ensure that the testimony is based solely on
    facts recalled and related prior to hypnosis, the party offering
    the testimony must establish its reliability by clear and con-
    vincing evidence.

    1. Testimony that has been hypnotically induced is not
    admissible. The rule is derived from *People v Gonzales,* 415
    Mich 615 (1982), and applies to cases that were tried after the
    date on which that case was decided or to cases, such as this
    case, that were pending on appeal on that date in which the
    issue was preserved.

    2. In this case, the testimony was not hypnotically induced.
    The testimony at trial was identical to prehypnosis statements
    that had been recorded, and the trial court found that the

REFERENCES FOR POINTS IN HEADNOTE
29 Am Jur 2d, Evidence § 831.7.
Admissibility of hypnotic evidence at criminal trial. 92 ALR3d 442.

procedures used to enhance the recollections were not suggestive.

3. The defendant was not denied a fair trial. Defense counsel was given adequate notice of the statements and the circumstances surrounding the hypnosis. The jury was well aware that the witnesses had been hypnotized, of the techniques used by the hypnotist, and of the substance of the prehypnotic statements. In addition, defense counsel vigorously attacked the assertion that the defendant looked like the man one of the witnesses saw on the night of the murder, and the defendant presented numerous alibi witnesses and made every attempt to impugn another witness' credibility.

Reversed.

Justice Levin, writing separately, stated that until the question arises in a case before the court whether the rule stated in *People v Gonzales* should be applied in a case tried before *Gonzales* was decided or in a case not pending on appeal which raised the issue, consideration of the question should be deferred.

125 Mich App 807; 337 NW2d 33 (1983) reversed.

### Opinion of the Court

CRIMINAL LAW — WITNESSES — HYPNOSIS.

A witness who has been hypnotized to enhance recollection is not automatically precluded from testifying and may be effectively cross-examined where testimony is based on facts recalled and related prior to being hypnotized; in order to ensure that the witness' testimony is based solely on such facts, the party offering the testimony must establish its reliability by clear and convincing evidence.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Juris Kaps,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

State Appellate Defender (by *P. E. Bennett)* for the defendant.

CAVANAGH, J. The primary question presented in this case was left open in *People v Gonzales,* 415 Mich 615; 329 NW2d 743 (1982), *modified* 417 Mich 968; 336 NW2d 751 (1983), *i.e.,* whether a

witness who has undergone hypnosis may testify at trial to facts which the witness recalled and related prior to hypnosis. We must also decide whether *Gonzales* is to be given retroactive or prospective effect.

I

Defendant was tried and convicted by a jury in February, 1980, of two counts of first-degree murder, MCL 750.316; MSA 28.548. He was sentenced to two concurrent terms of life imprisonment. The Court of Appeals summarized the facts of this case as follows:

"Defendant was arrested for the shooting deaths of James and Sandra Frank. At defendant's trial, Diane Downer, defendant's girlfriend and accomplice, testified that she and defendant had planned to take $30,000 from James Frank when he came to their home to complete a prearranged deal to buy $30,000 worth of marijuana. When Frank arrived, Downer let him in and led him to the dining room. As Frank entered the room, defendant hit him over the head with a champagne bottle, but failed to render him unconscious. A struggle ensued which ended when defendant shot Frank in the shoulder.

"Downer testified that to protect their reputations as 'honest' drug dealers, she and defendant decided to kill Frank. While transporting Frank to a secluded spot, he escaped from the pick-up truck and ran to a nearby home. As Downer and defendant were struggling to get Frank back into the truck, Donald VerHage came to the door of the house. As Nixon placed Frank in the truck, Downer informed VerHage that Frank had been in an accident and they were taking him to the hospital. After this incident, they drove Frank to a secluded spot behind his house where defendant shot him in the head. The pair then went to Frank's house where they convinced his wife to accompany them to the same spot where they had killed her husband. As she stepped off

the truck, defendant shot her in the head." *People v Nixon,* 114 Mich App 233, 235-236; 318 NW2d 655 (1982).

Prior to trial, defendant moved to suppress the testimony of VerHage and Clark Porter (a friend of the Franks) on the grounds that they had been hypnotized during the police investigation of the Franks' disappearance. Defendant also sought to suppress the testimony of Gary Powell, the police detective who had hypnotized VerHage and Porter. After listening to tape recordings made before, during, and after the hypnosis sessions, and examining Powell, the trial court denied the motions. The court concluded that hypnosis was a valid method of refreshing a witness' memory and that Powell had not suggested any facts to VerHage and Porter. However, defendant was allowed to play the tapes for the jury to assist them in evaluating the witnesses' credibility and the suggestiveness of the hypnosis procedures. The witnesses were excused from the courtroom while the tapes were played.

VerHage testified at trial that he was not able to get a full face view of the man who helped James Frank into the truck. However, he did notice that the man was white, had straight collar-length hair which covered his ears, had no discernible facial hair, was about as tall as the female, and wore a blue nylon windbreaker. This description was substantially identical to the witness' statements given both before and during hypnosis. The only discrepancy was that VerHage had described the male as "stocky" while under hypnosis.

VerHage further testified that defendant looked like the man he saw at his home, although defendant's hair was shorter. On cross-examination, VerHage admitted that defendant was not

"stocky," nor did he resemble the police sketch
made by Detective Powell immediately after Ver-
Hage underwent hypnosis. He also admitted tell-
ing police several days after the incident that he
probably would be unable to identify the man.
Nevertheless, VerHage identified defendant six
months later in a lineup.

Porter merely testified at trial that defendant
was present at the Franks' home shortly before
their disappearance. The tapes, which were played
at defendant's request, contained considerably
more information, however; *e.g.,* James Frank told
Porter that he was going to meet defendant later
that evening concerning a marijuana deal, and
Sandra Frank stated that she was "scared to
death" of defendant because he was violent. Por-
ter's statements both before and during hypnosis
were substantially identical.[1]

Detective Powell testified that he had been an
investigative hypnotist for less than a year. His
formal training consisted of a 32-hour police semi-
nar. He was also a police artist and had worked
for three years with a state police psychologist
who practiced investigative hypnosis. Powell fur-
ther testified that he had asked open-ended ques-
tions during hypnosis to avoid suggesting answers
to the subject. He also explained that hypnosis is
not a truth-seeking device and that it is possible to
lie while under hypnosis or to recall facts inaccu-
rately. Defendant presented no expert testimony
concerning hypnosis.

The trial court carefully instructed the jury

[1] One of defendant's alibi witnesses, Jeffrey Scott Dunfee, men-
tioned during his trial testimony that he had undergone hypnosis at
his own expense in order to recall his and defendant's whereabouts on
the day before and of the Franks' disappearance. Although Dunfee
stated that he could not recall anything prior to hypnosis, the
assistant prosecutor did not object to his alibi testimony. Plaintiff has
not challenged the admissibility of this testimony on appeal.

several times that the tapes could be used only to evaluate the credibility of the witnesses, rather than to establish the truth of the matters asserted therein. The jury was also instructed on the credibility of expert witnesses.

The Court of Appeals affirmed defendant's convictions, holding that a witness can testify about those aspects of a case remembered prior to hypnosis. Furthermore, any error in admitting the post-hypnotic testimony was harmless beyond a reasonable doubt because 1) VerHage never positively identified defendant, 2) the pre- and post-hypnotic tapes were played for the jury, thus enabling them to evaluate VerHage's trial testimony, and 3) the most damaging evidence against defendant was given by Downer. 114 Mich App 237-238. In lieu of granting leave to appeal, this Court remanded the case to the Court of Appeals for reconsideration in light of *Gonzales.* 417 Mich 932; 330 NW2d 855 (1983). On remand, defendant's convictions were reversed because his right to cross-examine Ver-Hage and Porter had been unduly infringed by the lasting effects of the hypnosis. 125 Mich App 807, 809-810; 337 NW2d 33 (1983). We granted plaintiff's application for leave to appeal. 418 Mich 897 (1983).

II

In *Gonzales,* this Court joined a growing number of jurisdictions which have refused to admit hypnotically induced testimony. Plaintiff does not challenge this holding, nor has it presented evidence that hypnosis is now a generally accepted method of accurately improving a witness' memory. Instead, plaintiff maintains that defendant's convictions should be reinstated because 1) *Gonzales* should not be applied retroactively to the

instant case, 2) a previously hypnotized witness
may testify at trial to facts which were recalled
and related prior to hypnosis, and 3) any error in
admitting the testimony does not require reversal.

## A

In determining whether a judicially created rule
of law should be applied retroactively, a court
must consider the purpose of the new rule, the
general reliance on the old rule, and the effect on
the administration of justice. *Stovall v Denno,* 388
US 293, 297; 87 S Ct 1967; 18 L Ed 2d 1199 (1967);
*People v Hampton,* 384 Mich 669, 674; 187 NW2d
404 (1971).

Prior to *Gonzales,* this Court had not addressed
the problem of hypnotically induced testimony.[2]
Other jurisdictions had split on whether such testi-
mony was always admissible, admissible only if
certain safeguards were met, or completely inad-
missible. See *Gonzales, supra,* 415 Mich 624-626,
and cases cited therein. Those jurisdictions which
have refused to admit hypnotically induced testi-
mony have generally refused to give their deci-
sions full retroactive effect. See, *e.g., State v Col-
lins,* 132 Ariz 180, 189-191; 644 P2d 1266 (1982);
*People v Shirley,* 31 Cal 3d 18; 181 Cal Rptr 243;
641 P2d 775 (1982), *cert den* 459 US 860; 103 S Ct
133; 74 L Ed 2d 114 (1982); *People v Adams,* 137
Cal App 3d 346, 350-353; 187 Cal Rptr 505 (1982);
*People v Williams,* 132 Cal App 3d 920, 923-926;
183 Cal Rptr 498 (1982); *Commonwealth v Kater,*
388 Mass 519; 447 NE2d 1190, 1198 (1983); *State v*

---

[2] At the time of this trial, the Court of Appeals had decided only
one case concerning hypnosis, and that case was factually distinguish-
able. See *People v Hangsleben,* 86 Mich App 718; 273 NW2d 539
(1978) (statements made by a defendant while under hypnosis are
inadmissible to prove the truth of the matters asserted therein or to
bolster his credibility).

*Peoples,* 311 NC 515; 319 SE2d 177, 188-189 (1984). *Cf. State v Koehler,* 312 NW2d 108, 110 (Minn, 1981).

The Arizona Supreme Court, in determining that the exclusionary rule enunciated in *State v Mena,* 128 Ariz 226; 624 P2d 1274 (1981), should be applied only to cases tried or pending on appeal after *Mena* was decided, evaluated the aforementioned three-factor test as follows:

"The purpose of the holding in *Mena* and the present case is to exclude from a criminal trial posthypnotic testimony because of its basic unreliability. 'The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a "question of probabilities." ' [Citations omitted.] The purpose of the *Mena* rule does not warrant the reexamination of unknown numbers of jury verdicts. Not every refinement of the law should result in the rejuvenation of postconviction appeals. Additional safeguards present during trial minimize the possibility of the miscarriage of justice. The purpose of the rule in *Mena* ' "[does] not clearly favor either retroactivity or prospectivity[.]" '
. . . [T]herefore, we must examine the second and third criteria set out by the Supreme Court.

"The reliance police authorities placed on the prior law is the second criterion in deciding if a principle should be retroactively applied. The apparent reliance of the police in the hypnosis area clearly weighs in favor of the prospective application of *Mena* and the case before us. There was no clear statement of the law proscribing the use of posthypnotic testimony prior to *Mena.* The police were not on notice pre-*Mena* that placing persons under hypnosis would then preclude their testimony at a subsequent trial. The argument could be made that the police had notice of the incompetency of previously hypnotized witnesses after *State v La Mountain,* 125 Ariz 547; 611 P2d 551 (1980). *Mena,* however, as was noted by the trial judge below, is a much clearer statement of this Court's position on posthypnotic testimony. Therefore, the reliance that the police placed on the admissibility of the testimony of

persons hypnotized pre-*Mena* operates in favor of *Mena* having only prospective application. 'The point of reliance is critical, not because of any constitutional compulsion, but because it determines the impact that newly articulated constitutional principles will have upon convictions obtained pursuant to investigatory and prosecutorial practices not previously proscribed.' *Jenkins v Delaware,* 395 US 213, 218; 89 S Ct 1677; 23 L Ed 2d 253 (1969).

"The third criterion enunciated by the United States Supreme Court is the effect of retroactive application on the administration of justice.

" 'We are reluctant to apply a constitutional rule of criminal procedure retroactively as "[t]o characterize a past proceeding as unconstitutional and therefore void reflects seriously on the integrity of the law, . . . weakens the confidence of those who trusted in the existence and validity of the rule and undermines the doctrine of the finality of prior determinations." ' [Citations omitted.]

"It is possible that juries in Arizona have convicted defendants in trials where post-hypnotic testimony was introduced. But the law is dynamic. It is a continuum of succeeding redefinitions. Not every refinement in the law should call into question all prior convictions. Justice does not demand judicial reexamination of all criminal trials for each new advancement in judicial thinking. The judiciary could not function if there was never any finality to decisions. It is for this reason that only where there is a denial of a basic right of constitutional magnitude that is correctable will retrospective application be invoked. This is not the case here.

"There is practical consideration in addition to the taxing of trial and appellate courts in denying the retroactive employment of *Mena.* The fact that a witness has undergone hypnosis may not be in the record, and therefore an appellate court would be handicapped in discovering this information.

"Because of the unforeseen change in the law, the burden retrospective application would place on the administration of justice, and the need for finality, we hold *Mena* to be prospective only." *Collins, supra,* 132 Ariz 189-190.

We adopt this reasoning and hold that *Gonzales* is to be applied only to those cases tried after the date of that decision and those cases pending on appeal which raised the issue. Since defendant's case was on appeal to this Court when *Gonzales* was decided and the hypnosis issue was properly raised and preserved, *Gonzales* is theoretically applicable. Nevertheless, we conclude that Ver-Hage and Porter's trial testimony was not hypnotically induced.

B

In *Gonzales*, this Court reversed defendant's conviction because it was based almost entirely on testimony which was induced by several suggestive pretrial hypnotic sessions. Prior to hypnosis, the key prosecution witness had no recollection of the incident and had not indicated that defendant was involved. We concluded:

"The process of hypnosis is not a reliable means of accurately *restoring forgotten incidents or repressed memory,* and to permit posthypnotic testimony would unfairly denigrate the defendant's right to cross-examination. Therefore, we hold that until hypnosis gains general acceptance in the fields of medicine and psychiatry as a method by which memories are accurately improved without undue danger of distortion, delusion, or fantasy, and until the barriers which hypnosis raises to effective cross-examination are somehow overcome, the testimony of witnesses *which has been tainted by hypnosis* must be excluded in criminal cases.

"We do not foreclose, by this opinion, the use of hypnosis as an extremely useful investigative tool. A party could preserve a witness's prehypnotic testimony by using an MRE 804(b)(1) deposition. After the hypnotic session, the subject would be considered 'unavailable as a witness.'" 415 Mich 626-627. (Emphasis added.)

On April 25, 1983, this Court, on its own motion, modified this holding:

"This opinion should not be read as determining the question of the admissibility of this witness's testimony concerning facts she was able to recall and relate prior to hypnosis, a question which is reserved until raised on an adequate record in an appropriate case." 415 Mich 627.

The instant case differs significantly from *Gonzales.* There, the witness testified almost entirely to matters "recalled" under hypnosis. In contrast, the trial testimony of VerHage and Porter was identical to their prehypnosis statements. We further note that almost every jurisdiction which excludes hypnotically induced testimony allows the witness to testify to facts which were recalled *and* related prior to hypnosis. See, *e.g., Collins, supra,* 132 Ariz 209; 644 P2d 1295; *People v Quintanar,* 659 P2d 710, 711 (Colo App, 1982); *State v Collins,* 296 Md 670, 702; 464 A2d 1028 (1983); *Kater, supra,* 447 NE2d 1193; *Koehler, supra,* 312 NW2d 110; *State v Patterson,* 213 Neb 686, 690; 331 NW2d 500 (1983); *People v Hughes,* 59 NY2d 523, 544; 466 NYS2d 255; 453 NE2d 484 (1983); *Peoples, supra,* 319 SE2d 188; *Robison v State,* 677 P2d 1080, 1085 (Okla Crim App, 1984), *cert den* — US —; 104 S Ct 3524; 82 L Ed 2d 831 (1984); *Commonwealth v Taylor,* 294 Pa Super 171, 175; 439 A2d 805 (1982); *State v Martin,* 101 Wash 2d 713; 684 P2d 651, 656 (1984). Although California prohibits a witness from testifying to matters discussed during hypnosis, the witness can still testify to wholly unrelated matters. *Shirley, supra,* 31 Cal 3d 66-70.

Defendant's argument that hypnosis renders a witness completely incompetent to testify is sup-

ported by persuasive authority. See Diamond, *Inherent problems in the use of pretrial hypnosis on a prospective witness,* 68 Cal L R 313 (1980). Nevertheless, we decline to adopt such a rule for the reasons given by the Arizona Supreme Court:

"We recognize, however, that there is danger even in allowing testimony of facts recalled prior to hypnosis, because the subsequent hypnosis does have an effect upon the witness' confidence in those facts. It is for this reason that we originally adopted Dr. Diamond's suggestion that any witness who had been hypnotized would be incompetent to testify for any purpose. We are persuaded, however, that with respect to investigatory use of hypnosis, the benefit does outweigh the danger. We also recognize that none of the other states which have adopted the rule of *per se* admissibility have gone as far as *Mena.* They allow a witness to testify to those facts which were demonstrably recalled prior to hypnosis. . . . Some of the attendant risks may be minimized by allowing cross-examination of the previously hypnotized witness in order to permit the opposing party to establish the fact of hypnosis and to introduce expert evidence showing the inherent possibility that the witness might have become subjectively certain of events only tentatively recalled before hypnosis." *Collins, supra,* 132 Ariz 210.

In order to ensure that the witness' trial testimony is based solely on facts recalled and related prior to hypnosis, we hold that the party offering the testimony must establish its reliability by clear and convincing evidence. In this regard, we commend for examination the standards articulated in *Collins, supra,* and *Hughes, supra,* 59 NY2d 546-548.

## C

The trial testimony of VerHage and Porter was consistent with the facts which they had recalled and related prior to hypnosis. These prehypnotic statements were recorded, and defense counsel was

given adequate notice of the statements and the circumstances surrounding the hypnosis. Furthermore, the trial court found that the procedures used by Detective Powell were not suggestive. Although additional safeguards could have been undertaken to ensure that the hypnosis did not taint the witnesses' prehypnotic recollections, we cannot say that the trial court abused its discretion in allowing the witnesses to testify.

The Court of Appeals, on remand, concluded that defendant had been denied a fair trial because the lasting effects of hypnosis deprived him of his right to cross-examine VerHage and Porter completely. However, the mere fact that a prosecution witness has been hypnotized does not automatically preclude effective cross-examination. See *Adams, supra,* 137 Cal App 3d 352-353; *People v Smith,* 117 Misc 2d 737; 459 NYS2d 528, 543 (1983). The jury was well aware of the fact that the witnesses had been hypnotized, the techniques used by the hypnotist, and the substance of the prehypnotic statements.[3] Defense counsel vigorously attacked VerHage's conclusion that defendant looked like the man he saw on the night of the murder. Porter's trial testimony merely placed

---

[3] The use of statements obtained *prior* to hypnosis for substantive, impeachment, and other purposes is governed by the same rules applicable to other prior recorded statements. Statements obtained *after* hypnosis are inadmissible per se under *Gonzales,* except as otherwise stated in this opinion and in accordance with applicable evidentiary rules.

The trial court correctly ruled that statements made *during* hypnosis are inadmissible to prove the truth of the matters asserted therein. See *Hangsleben, supra,* 86 Mich App 728; *Smith, supra,* 459 NYS2d 540; 92 ALR3d 442, §§ 6-7, pp 455-461, and cases cited therein. Given the inherent problems of investigative hypnosis, we also hold that statements obtained from a witness during hypnosis cannot be used to bolster or impeach the witness' credibility. See *Hangsleben,* fn 2 *supra,* pp 728-729. Generally, the suggestiveness of the hypnosis session can be adequately conveyed to the jury through the testimony and cross-examination of the hypnotist, as well as the presentation of other expert testimony. Any error in admitting the tapes in the instant case was harmless beyond a

defendant at the Franks' home sometime before their disappearance.[4] Finally, as the Court of Appeals noted in both of its opinions, the most damaging evidence against defendant was presented by Downer, his alleged accomplice. Defendant presented numerous alibi witnesses and made every attempt to impugn Downer's credibility. The trial was essentially a credibility battle. Under these circumstances, we find that defendant received a fair trial.

### III

The decision of the Court of Appeals is reversed and defendant's convictions are reinstated.

WILLIAMS, C.J., and RYAN, BRICKLEY, and BOYLE, JJ., concurred with CAVANAGH, J.

KAVANAGH and LEVIN, JJ., would affirm the judgment of the Court of Appeals for the reasons stated in *People v Gonzales.*

LEVIN, J. *(separate opinion).* This Court should, until the question arises in a case tried before *People v Gonzales,* 415 Mich 615; 329 NW2d 743 (1982), was decided or a case not "pending on appeal which raised the issue," defer consideration of the question whether the rule stated in *Gonzales* should be applied in such a case.

---

reasonable doubt, especially since defense counsel insisted that the tapes be played and used them to impeach the prosecution witnesses' credibility.

[4] Although hearsay statements contained in the tapes made before and during Porter's hypnosis were not particularly helpful to defendant's case and might have been otherwise inadmissible, defense counsel did not request that the tapes be edited before they were played to the jury.