PEOPLE v ROSENGREN

Docket No. 83369. Submitted August 5, 1986, at Grand Rapids. Decided April 21, 1987. Leave to appeal applied for.

   Gary L. Rosengren and Kenneth Gray abducted a woman in the City of Marquette, Marquette County, and transported her to the City of Iron River, Iron County. The victim was sexually assaulted in both counties. Rosengren was charged with kidnapping and criminal sexual conduct in the first degree in Marquette County and with criminal sexual conduct in the first degree in Iron County, following his arrest in March, 1981. The charges were consolidated for trial in Marquette County. Because the victim had been hypnotized in the hope that she would be able to remember the full license plate number of the automobile in which she had been placed after her abduction, defendant moved, in November, 1981, just five days before his scheduled trial, to suppress the testimony of the victim. The trial court, Edward A. Quinnell, J., denied the motion to suppress in December, 1981. Pursuant to an agreement between the prosecution and defense counsel, the trial was held in abeyance so that defendant could seek interlocutory review by the Court of Appeals of the denial of the motion to suppress; however, defendant never actively pursued that appeal. In December, 1982, the Michigan Supreme Court decided *People v Gonzales,* 415 Mich 615 (1982), in which it held that "the testimony of witnesses which has been tainted by hypnosis must be excluded in criminal cases." In January, 1983, the trial court granted defendant's motion to quash and suppressed the use of the testimony of the victim in future proceedings of the

REFERENCES

Am Jur 2d, Criminal Law §§ 291, 652 *et seq.*; 849 *et seq.*

Am Jur 2d, Evidence §§ 831.7, 1148-1151.

Am Jur 2d, Indictments and Informations § 29 *et seq.*

Application of speedy trial statute to dismissal or other termination of prior indictment or information and bringing of new indictment or information. 39 ALR4th 899.

Admissibility of hypnotic evidence at criminal trial. 92 ALR3d 442.

Prejudicial effect of prosecuting attorney's remarks, in opening statement to jury, that another defendant has been convicted or has pleaded guilty. 48 ALR2d 1004.

matter. In July, 1983, the prosecutor sought reconsideration of the January, 1983, order on the basis of an April, 1983, amendment of the *Gonzales* opinion by the Supreme Court in which the Court indicated that the opinion should not be construed to have decided the question of the admissibility of testimony concerning facts which the witness could recall and relate prior to hypnosis. On the basis of the amended opinion, the trial court granted the motion for reconsideration and reinstated the charges in August, 1983. In November, 1983, defendant moved to dismiss on the basis of denial of a speedy trial. That motion was denied in January, 1984. At the pretrial conference in February, 1984, defendant indicated that an interlocutory appeal would be pursued. When by April no interlocutory appeal was pursued, trial was scheduled for June 4, 1984. Defendant then filed an application for leave to file a delayed appeal in the Court of Appeals. The application for leave to appeal was denied in July, 1984. A pretrial conference was held in August, 1984, and trial commenced in October, 1984. At trial, Kenneth Gray, who had been allowed to plead guilty to the kidnapping count with a sentence recommendation of seven to thirty years in exchange for his testimony against defendant, testified. The nature of that agreement was brought out without objection by the prosecutor in his direct examination of Gray. The jury found defendant guilty of two counts of criminal sexual conduct in the first degree. Defendant appealed.

The Court of Appeals *held:*

1. The trial court properly reinstated the charges against the defendant and permitted the victim to testify as to those matters recalled by the victim prior to her hypnotic session. No error resulted from having a posttrial hearing, as requested by defendant, rather than a pretrial hearing to determine whether the victim's testimony was admissible, since the record clearly establishes that the hypnotic session was not suggestive and related solely to an unsuccessful attempt to determine the license plate number.

2. It was not error for the prosecutor to bring out on direct examination of the accomplice the fact that the accomplice had entered into a bargain in exchange for his testimony and that the bargain involved his pleading guilty to one of the charged crimes.

3. It was not error for the prosecutor to characterize defendant's testimony as being not worthy of belief.

4. Defendant was not denied his constitutional right to a speedy trial, and any delay that was not attributable to the

defendant did not result in such prejudice as would require dismissal of the charges.

5. The question of whether the prosecution failed to endorse all res gestae witnesses is not properly preserved for appellate review.

Affirmed.

D. E. HOLBROOK, JR., J., concurred in the result only.

1. CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVIDENCE — HYPNOSIS.

It is not an abuse of discretion for a trial court to refuse to suppress the testimony of a crime victim by reason of the fact that the victim was hypnotized during the course of the police investigation where the hypnotic session was not suggestive and was focused on trying to obtain the license plate designation of the car used in the abduction of the victim and defense counsel was supplied with copies of both the prehypnotic interviews of the victim and the hypnotic session.

2. CRIMINAL LAW — WITNESSES — PLEA BARGAINS.

It is not error for the prosecution to elicit on direct examination of a testifying accomplice the fact that the testifying accomplice pled guilty pursuant to a bargain with the prosecution.

3. CRIMINAL LAW — PROSECUTORIAL COMMENT.

It is not error mandating reversal for a prosecutor to politely refer to a defendant's testimony as being not worthy of belief; a prosecuting attorney may, in advocating his cause, point out the incredibility of a defendant's testimony and may describe that incredibility in terminology customarily employed for that purpose.

4. CONSTITUTIONAL LAW — SPEEDY TRIAL — INFORMATIONS — QUASHING OF INFORMATIONS.

The period of time between the quashing of an information and the reinstatement of the information is not a delay attributable to the prosecution for the purpose of determining whether a criminal defendant was denied his constitutional right to a speedy trial, since during such period there was no charge pending against the defendant.

5. CONSTITUTIONAL LAW — SPEEDY TRIAL — SINCERITY OF CLAIM.

Conduct of a criminal defendant inconsistent with and evidencing the insincerity of a speedy trial claim weighs heavily against a claim by the defendant that he was denied a speedy trial.

State Appellate Defender (by *Susan M. Meinberg*), for defendant.

Before: HOOD, P.J., and D. E. HOLBROOK, JR., and W. R. PETERSON,* JJ.

W. R. PETERSON, J. Defendant was charged with kidnapping and with multiple counts of first-degree criminal sexual conduct in Iron and Marquette Counties. The matters having arisen from the same event, they were consolidated for trial. Defendant appeals his jury conviction of two counts of CSC I, one in each county.

On February 28, 1981, the victim was abducted in the City of Marquette when defendant seized her as she was leaving a grocery store and forced her into the back of an automobile driven by Kenneth Gray. The automobile was driven for some time, during which the victim was sexually abused and raped by both defendant and Gray. They arrived at another city, which proved to be Iron River. There the victim was blindfolded and led into a house where she was kept overnight and subjected to further rapes by defendant.

On the following morning, the victim was led blindfolded to a different car (Gray's) and driven some distance. During that drive defendant again forced the victim to have intercourse. The victim was then released along the road and hitchhiked back to Marquette where she went to the hospital.

Defendant's testimony was that the victim had joined him and Gray voluntarily, that she spent the night with him voluntarily, and that the various sexual events were all consensual.

Gray, who was originally charged with defendant, was sentenced in January, 1982, to a term of fifteen to fifty years in an unrelated case. He then accepted an offer from the prosecuting attorney to be allowed to plead guilty to a kidnapping count with a sentence recommendation of seven to thirty

* Circuit judge, sitting on the Court of Appeals by assignment.

years in return for his testimony in the trial of defendant. His testimony corroborated that of the victim.

The victim was able to describe Gray's car accurately to the police. She had also seen the license plate, but could not say what all the letters were.[1] On March 11,[2] in the hope that hypnosis might help the victim recall the complete lettering of the license plate, she was hypnotized and reinterviewed. The effort was not successful.

Defendant was arrested on March 12, 1981, and the matter progressed through pretrial conferences, various motions, the release of defendant on a reduced bond, the consolidation of the Iron County charges with those in Marquette, and severance of the cases of defendant and Gray. Defendant's trial was scheduled for November 30, 1981. In the interim, on July 28, 1981, *People v Gonzales,* 108 Mich App 145; 310 NW2d 306 (1981), involving hypnosis of a witness, was decided. On November 25, 1981, at an in-chambers conference, defense counsel raised the *Gonzales* question. Various agreements were reached, namely that the trial date would be postponed, that defendant would move to suppress the testimony of the victim under the authority of *Gonzales,* that a record would be made of the facts surrounding the hypnosis of the victim, that the court would certify the matter to the Court of Appeals if the motion to suppress was denied, and that defendant and Gray would then seek interlocutory appeals on the issue.

---

[1] She recalled the lettering on the plate as including xy and the number as 540.

[2] The victim was interviewed by police on March 1, 2, 5, and 6, during which interviews she gave descriptions of her assailants and descriptions of places, drove with officers to various places and took a polygraph examination successfully. Her story was consistent, but she never could give the complete lettering on the license plate.

The court did deny the motion to suppress on December 14, 1981, but then things hastened to a halt. Gray eventually did file an application for leave to file a delayed appeal of the suppression order in his case, but defendant never undertook the interlocutory appeal. Almost a year later, on November 24, 1982, a memorandum order was filed by the Court of Appeals which indicated that the assistant prosecuting attorney and defense counsel agreed that the case would be adjourned pending Court of Appeals action on Gray's application,[3] and that defendant would waive any speedy trial claim as to delay attributable to the resolution of the hypnosis issue.

With somewhat greater dispatch, *Gonzales* had made its way to the Supreme Court, which held on December 23, 1982, "the testimony of witnesses which has been tainted by hypnosis must be excluded in criminal cases." 415 Mich 615, 627; 329 NW2d 743 (1982). Based thereon, on January 25, 1983, the trial court granted the defendant's motion to quash and suppressed the testimony of the victim in future proceedings in the matter.[4]

On April 25, 1983, the Supreme Court on its own motion amended its opinion in *Gonzales* to add this language:

> This opinion should not be read as determining the question of the admissibility of this witness's testimony concerning facts she was able to recall and relate prior to hypnosis, a question which is

---

[3] At that date, Gray's application for leave to file a delayed appeal had neither been accepted nor rejected by the Court of Appeals.

[4] It appears from the file that the order was so drafted in contemplation of remand to the district court for further preliminary examination to determine if probable cause could be established without the testimony of the victim.

reserved until raised on an adequate record in an appropriate case. [415 Mich 627.][5]

The prosecutor eventually became aware of this addendum to *Gonzales* and, on July 18, 1983, filed a motion for reconsideration of the trial court's January 25, order. On July 29, 1983, the trial court vacated its January 25, order, denied the motion to quash, and ordered that the victim be allowed to testify "to the extent of her memory of the event prior to any hypnotic session."

Defendant first contends that it was error for the trial court to reconsider its earlier order quashing the information, arguing that such was an improper retroactive application of the "second" *Gonzales* opinion (April 25, 1983) and that defendant was entitled to trust and rely on the first *Gonzales* opinion (December 23, 1982) citing *People v Nixon,* 421 Mich 79, 88; 364 NW2d 593 (1984), in which the Court held that *Gonzales* was applicable to "cases tried after the date of that decision and those cases pending on appeal which raised the issue." The fallacy, of course, is to speak of a *Gonzales I* and *Gonzales II,* for there are not two separate decisions but only one in *Gonzales.*[6]

In *Nixon,* the Court also resolved the question left open in *Gonzales,* holding that a witness could testify about matters recalled prior to hypnosis, but added:

> In order to ensure that the witness' trial testimony is based solely on facts recalled and related prior to hypnosis, we hold that the party offering the testimony must establish its reliability by clear and convincing evidence. In this regard, we

---

[5] The question so reserved was decided in *People v Nixon,* 421 Mich 79; 364 NW2d 593 (1984), allowing the admission of such testimony.

[6] *Gonzales* did not involve two separate decisions, nor even a rehearing. Rather, the Court merely took pains by its addendum to make clear the scope of its decision on the facts of the case.

commend for examination the standards articulated in *Collins* [*State v Collins,* 132 Ariz 180; 644 P2d 1266 (1982)], and *Hughes* [*People v Hughes,* 59 NY2d 523, 546-548; 466 NYS2d 255; 453 NE2d 484 (1983)].

Citing *Nixon,* defendant contends that, even if it was appropriate for the trial court to reinstate the charges against defendant, the court nonetheless erred in allowing the victim to testify without a pretrial hearing to determine whether the victim's prehypnosis testimony was reliable.

*People v Hughes,* cited in *Nixon,* discussed two different stages for testing prehypnotic recollection of the witness, one as to competency, and one as to weight.[7] The first step according to *Hughes* is the determination of the competency of the witness to give testimony,[8] in which determination the proponent of the testimony has the burden of proving its reliability by clear and convincing evidence.

Here, going to trial before *Nixon* was decided, neither court nor counsel could know that this test would be adopted; they only knew that *Gonzales* had left open the question of the admissibility of the testimony of a hypnotized witness as to facts recalled and related prior to hypnotism. Defendant elected to reserve that question by asking for a posttrial hearing thereon in the event his client should be convicted, and waived the presence of

---

[7] Assuming that a witness is found competent to testify, the second stage is merely the opportunity, available as to any kind of evidence, of one litigant to challenge, by whatever means might be appropriate, the quality of an opponent's evidence.

  If the witness is held to be competent to testify, the defendant, of course, has the option at trial of introducing proof with respect to hypnotic procedures followed as well as expert testimony concerning the potential effect of the hypnosis on the witness's recollections. [*People v Hughes,* 59 NY2d 547-548.]

[8] Competency is a preliminary question for the court. MRE 104.

the hypnotist at trial.[9] We find no abuse of discretion on the part of the trial judge as to the timing of the consideration of the admissibility of the victim's testimony when he followed the procedure requested by defense counsel. Neither can we say that the trial judge abused his discretion as to the conclusion reached in denying the motion to suppress. Here, as in *Nixon,* the hypnotic session was not suggestive, and defense counsel had been furnished with the prehypnotic interviews with the victim and a transcript of the hypnotic session. The hypnotic session was held before the police had any suspects and the focus of the hypnotic session was as to the letters on the license plate of the car from which the victim was released, in which regard the hypnosis failed to develop further recollection on the part of the victim.

Defendant also claims that error occurred when the prosecution improperly introduced evidence that the accomplice, Gray, entered a guilty plea in the case, citing *People v Lytal,* 415 Mich 603; 329 NW2d 738 (1982). In the course of direct examination, the prosecuting attorney elicited from Gray the terms of the plea bargain noted above, to which testimony defendant made no objection.[10]

Once again we see an effort by the prosecution to comply with *People v Atkins,* 397 Mich 163; 243 NW2d 292 (1976), and *People v Woods,* 416 Mich 581; 331 NW2d 707 (1982), apparently running

---

[9] Defendant seems to have made a tactical choice to keep the fact of hypnosis from the jury. If so, that strategy, even in hindsight, does not seem unreasonable. It was a choice made after defense counsel had been furnished with the prehypnotic interviews with the victim and a transcript of the hypnotic session and was not an uninformed choice. Evidence that the victim had been hypnotized, and, particularly, evidence that the victim had been consistent in her prehypnotic statements might well have impressed the jury favorably about her testimony.

[10] Indeed, defendant subsequently offered into evidence the letter by which the prosecutor extended the offer of the agreement to Gray.

afoul of *Lytal.* In *Atkins,* the Court dealt with the problems of making the jury aware of the inducements given to obtain the testimony of an accomplice so that the jury could intelligently consider the credibility of the accomplice. The opinion of Justice FITZGERALD, joined by Justices COLEMAN, WILLIAMS and KAVANAGH, said:

> Where an accomplice or co-conspirator has been granted immunity or other leniency to secure his testimony, it is incumbent upon the prosecutor and the trial judge, if the fact comes to the court's attention, to disclose such fact to the jury upon request of defense counsel. [397 Mich 173.]

Subsequently, in *Woods,* the Court, citing that language, added the requirement that the consideration given should be made a matter of proof as distinguished from a statement thereof by the prosecuting attorney. 416 Mich 602.

One of the difficulties imposed on bench and bar by this language lies in its apparent limitation of disclosure to cases where it is requested by defense counsel, a condition repeated in *People v Standifer,* 425 Mich 543; 390 NW2d 632 (1986). The problem arises because the quoted language, repeated in *Woods* and *Standifer,* may not be that of a majority of the *Atkins* Court. *Atkins* was a five-justice decision and the appearance of three other signatures with that of the author of the quoted language would seem to clearly establish the ruling. The rub is that two of the signers of the FITZGERALD opinion, Justices WILLIAMS and KAVANAGH, also signed the concurring opinion of Justice LEVIN which does not condition such disclosure on the demand of defense counsel. Thus, three of the five justices seemingly state an affirmative obligation on the prosecution to disclose without regard to a request from the defense.

Subsequently, *People v Lytal* said that it was error to introduce evidence at trial of the conviction of an accomplice and said vis-à-vis the disclosure requirement of *Atkins:*

> The prosecutor is only obliged to disclose any consideration offered to or received by the witness. That can be done without adverting to whether the witness was, if charged, convicted. [415 Mich 612.]

When it is the plea itself which is the consideration, how it can be disclosed without adverting to it is something of a dilemma to the trial bench and bar.[11] The statement, although only dictum given the facts of the case, has been a matter of frequent concern,[12] particularly since it appeared to be an overbroad statement based on distinguishable precedents.[13]

In *People v Standifer, supra,* six members of the Court addressed the issue, again with less than decisive result. Justice BOYLE, joined by Justices WILLIAMS and BRICKLEY, sought to construe *Lytal* narrowly to a holding that conviction of an accomplice by trial was inadmissible where the accomplice was thereafter a witness and had been given no inducement by the prosecution to testify. Justice LEVIN, joined by Justice KAVANAGH, proposed to give the dictum of *Lytal* full application, a view

[11] In *Woods, supra,* the Court did not address the question although the record shows that the consideration given by the prosecution was a plea to a lesser charge.

[12] See *People v Buschard (On Remand),* 129 Mich App 160; 341 NW2d 260 (1983), lv den 419 Mich 895 (1984); *People v Horsfield,* 132 Mich App 56; 347 NW2d 6 (1984); *People v Allen,* 424 Mich 109; 378 NW2d 481 (1985).

[13] Thus the author of *Lytal* cites as authority his concurring opinion in *People v Crawl,* 401 Mich 1; 257 NW2d 86 (1977), a case in which all of the other members of the Court, in two opinions, said there was no merit to that issue. And see the discussion in *People v Standifer, supra.*

seemingly endorsed by Justice RILEY, who concurred with the opinion of Justice BOYLE solely on the ground that no manifest injustice resulted to the defendant. " 'Would you tell me please,' said Alice, 'what that means?' "[14]

We adhere to the view expressed by the opinion of Justice BOYLE in *Standifer* that it is not error to put into evidence a plea given by a testifying accomplice pursuant to a bargain with the prosecution. And, in any event, given the testimony of both the victim and Gray as to Gray's involvement, we cannot conceive of any way in which defendant could have been prejudiced by the jury's learning that Gray had entered a guilty plea because of his complicity in the case. In *Standifer,* the Court said that, if proof of such a plea was error, it would, absent objection below, be reviewed by the manifest injustice test. Even if we disagreed with the view taken by Justice BOYLE in *Standifer* as to the application of *Lytal,* we could find no manifest injustice here.[15]

Defendant also argues that the prosecuting attorney was guilty of misconduct by making an inflammatory closing argument which deprived defendant of a fair trial. He points to a single incident wherein the prosecutor politely referred to defendant's testimony as horse manure. He did so in the course of telling the jury that it was for the jury to decide who was telling the truth, and he then went on to compare the testimony of

[14] Lewis Carroll, *Through the Looking-Glass and What Alice Found There.* The question by Alice arises in response to Humpty Dumpty's explanation of the nature of words and his mastery of those words.

[15] We also note that defendant made no objection to the prosecutor's offer of the evidence in question and, indeed, expanded thereon by introducing the prosecutor's correspondence regarding the plea agreement as an exhibit. "Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969).

defendant to the other evidence in the case. There is absolutely no reason why a prosecuting attorney may not, in advocating his cause, point out the incredibility of a defendant's testimony when analyzing the evidence and describe that incredibility in the terminology customarily employed for that purpose. *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973); *People v Couch,* 49 Mich App 69; 211 NW2d 250 (1973). As the Court said in *Couch:* "In essence the prosecutor translated into layman's terms many of the concepts [of credibility] just discussed." 49 Mich App 73. Here the translation was crude but not improper. That the prosecutor apologized to the jury was not an admission of misconduct; his apology was for the simile employed and not for the logic of his argument.

Defendant also contends that his constitutional right to a speedy trial under US Const, Am VI, and Mich Const 1963, art 1, § 20, was violated by the delay in bringing him to trial. The length of the delay, more than forty-three months from arrest to trial, is presumptively prejudicial. *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948); *People v Grimmett,* 388 Mich 590; 202 NW2d 278 (1972); *People v Collins,* 388 Mich 680; 202 NW2d 769 (1972); *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Under *Barker,* that presumptively prejudicial delay triggers inquiry into other factors to be considered in the balancing of the competing interests to determine whether the accused has been deprived of his right to a speedy trial. 407 US 531; *People v Missouri,* 100 Mich App 310, 320; 299 NW2d 346 (1980); *People v Ross,* 145 Mich App 483, 490; 378 NW2d 517 (1985); *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973).

The progression of defendant's case included these significant events:

| | |
|---|---|
| March 12, 1981 | Defendant arrested. |
| June 8, 1981 | Defendant's bond reduced, enabling release. |
| November 25, 1981 | The parties stipulated to adjourn the matter pending interlocutory appeal of hypnosis issue. |
| November 24, 1982 | Defendant having failed to pursue an appeal, the parties again stipulated to adjourn pending such appeal and defendant waived speedy trial claim. |
| December 23, 1982 | Opinion filed in *People v Gonzales,* 415 Mich 615. |
| February 1, 1983 | The order quashing the information based on *Gonzales* is filed. (Note: Defendant's brief concedes that he is responsible for the period of delay from November 25, 1981, until February 1, 1983.) |
| July 18, 1983 | Prosecutor moved for reconsideration. |
| August 23, 1983 | Order granting prosecutor's motion is filed. |
| November 2, 1983 | Defendant moved to dismiss, claiming denial of speedy trial. |
| January 23, 1984 | Defendant's motion to dismiss denied. |
| February 6, 1984 | Pretrial conference at which defendant represented that an |

|                  | interlocutory appeal would be pursued. |
|------------------|----------------------------------------|
| April 13, 1984   | Defendant having failed to pursue an interlocutory appeal, a trial date was scheduled for June 4, 1984. |
| June 4, 1984     | Defendant filed application for delayed leave to appeal. |
| July 12, 1984    | Application for leave to appeal denied. (Note: Defendant's brief concedes that he is responsible for the delay from February 6, 1984, until July 12, 1984.) |
| August 3, 1984   | Pretrial conference, with trial date of October 29, scheduled. |
| October 29, 1984 | Trial commenced. |

As noted, defendant concedes that he is responsible for almost twenty months of the delay by reason of his own conduct. While he contends that the delay during the period of time between the quashing of the information and the subsequent reversal of that order should be attributed to the prosecution, we do not believe that the delay during that period should be attributed to either side, since there was, in effect, no charge pending against defendant during those seven months.[16]

Looking, then, to the 8½-month period in 1981 between defendant's arrest and the stipulation to adjourn the matter pending appeal, we find no

[16] A formal charge against, or restraint of, the accused is necessary to call the right to speedy trial into play. *United States v Marion,* 404 US 307; 92 S Ct 455; 30 L Ed 2d 468 (1971).

unusual delay for which either party may be faulted. After defendant was bound over, a number of pretrial conferences were held and a number of motions were made by each side as they prepared for trial of the multiple charges in one venue. Such delay was inherent in the complexity of the matter and the orderly resolution thereof; it is given a neutral tint and is assigned only minimal weight in determining whether defendant was denied a speedy trial. *People v Goode,* 106 Mich App 129; 308 NW2d 448 (1981), lv den 413 Mich 866 (1982).

After the reinstatement of the matter on August 23, 1983, fourteen months elapsed until trial. The record seems to indicate that defendant did not want a speedy trial and that his motion to dismiss because of a claimed denial of speedy trial was another dilatory tactic to put off the day of reckoning.[17] Having been responsible for much of the delay prior to the order quashing the information, his speedy trial motion, filed shortly after the order reinstating the charges, seems patently frivolous.[18] Only the 2½-month delay of the trial court in ruling on the motion was inexplicable. After the trial court denied the motion, defendant was responsible for the next delay (as conceded in his brief herein) from February 6 until July 12, 1984. Thereafter, the matter pursued a timely course to trial 3½-months later, another neutral period to be given only minimal weight.

The forty-three months from arrest to trial, while appearing on its face to be an intolerable

[17] See *People v Collins,* 388 Mich 680, 693-694; 202 NW2d 769 (1976); *People v Ovegian,* 106 Mich App 279, 284; 307 NW2d 472 (1981).

[18] The record shows that codefendant Gray promptly took steps to appeal the reinstatement and it appears that defendant was content to do nothing and try for a free ride with Gray's efforts.

delay, is thus seen as a relatively reasonable period given the delays attributable to defendant.

We have already touched on another factor to be considered, the defendant's assertion of the right to a speedy trial, our comments making it clear that we do not find it to be a significant factor herein. We add to those comments only this brief observation: If the failure to assert the right to a speedy trial is weighed heavily against a subsequent claim of denial thereof,[19] so too must the conduct of an accused inconsistent with and evidencing the insincerity of the claim which he has made. Defendant cannot have it both ways.

Neither do we find that defendant has suffered any prejudice from the delay herein. It may be that he suffered some anxiety from the pending charges, but that is of minimal importance in the scale of things when weighed against the offenses charged. We note that defendant was not subjected to an oppressive pretrial incarceration, having been released on bond early on in the proceedings. Thus, as noted in *Barker v Wingo, supra,* 407 US 532, the most serious inquiry is whether the delay has impaired defendant's defense. Defendant has made the bald assertion of such prejudice but has been unable to suggest any way in which his ability to challenge the prosecution's case or to marshal his own defense of consent has been harmed.

We conclude that the factors to be considered under *Barker v Wingo, supra,* indicate no denial of defendant's right to a speedy trial.

Defendant also claims that there are res gestae witnesses who were not endorsed or called at trial. The question was not raised in the trial court and,

---

[19] *People v Hammond,* 84 Mich App 60; 269 NW2d 488 (1978); *People v Bailey,* 101 Mich App 144; 300 NW2d 474 (1980).

while defendant may yet raise that question in the trial court by motion for new trial, it is not properly before us on this appeal. *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973); *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979).

Affirmed.

D. E. HOLBROOK, JR., J., concurred in the result only.