## PEOPLE v FINLEY

Docket No. 81221. Argued May 4, 1988 (Calendar No. 10). Decided
October 17, 1988. Rehearing denied *post,* 1211.

Robert L. Finley was convicted by a jury in the Wayne Circuit
Court, Thomas J. Foley, J., of four counts of first-degree crimi-
nal sexual conduct and of armed robbery. The Court of Ap-
peals, Danhof, C.J., and Cynar and J. M. Batzer, JJ., although
agreeing with the defendant that the trial court incorrectly
weighed the factor of similarity in admitting a prior burglary
conviction, affirmed, and, adopting the rule of *Luce v United
States,* 469 US 38 (1984), requiring a defendant to testify at
trial in order to preserve the issue of improper impeachment by
prior convictions, held that because the defendant did not
testify the issue was not preserved for review (Docket No.
85133). The defendant appeals.

In opinions by Chief Justice Riley, joined by Justices Boyle
and Griffin, and by Justice Brickley, the Supreme Court *held:*

An accused must testify at trial in order to preserve for
review the issue of improper impeachment by prior convictions.

And in opinions by Justice Brickley, Justice Cavanagh, and
Justice Levin, joined by Justice Archer, the Supreme Court
further *held:*

The rule is to apply only prospectively, beginning November
1, 1988.

Chief Justice Riley, joined by Justices Boyle and Griffin,
would hold that an accused must testify at trial in order to
preserve for review the issue of improper impeachment by
prior convictions.

1. Under FRE 609(a), where the probative value of evidence
of a prior conviction offered to impeach a defendant outweighs
its prejudicial effect, a trial court must admit the evidence.
Under the rule of *Luce,* a defendant must testify at trial in
order to preserve for review the issue of improper impeachment
by prior convictions. *Luce* provides a mechanism for meaning-
ful appellate review of an impeachment decision by requiring a
fully developed factual record upon which to examine the trial
court's decision, and, if determined to be erroneous, to decide
whether the error was harmless.

2. In Michigan, whether evidence of a prior conviction is

admitted depends on the category of the crime: evidence of convictions of crimes inherently probative of truth or veracity is automatically admitted; evidence of those not inherently probative of truth or veracity is automatically excluded; and evidence of those involving a theft component is admitted or excluded at the trial court's discretion on the basis of whether the probative value of admission would outweigh the prejudicial effect on the defendant—similar to the analysis required in federal court. Part of the trial court's decision whether to admit requires a determination of the importance of the defendant's testimony to the decisional process, largely unknowable unless the defendant testifies. There remains the same necessity of an adequate record to provide meaningful appellate review. Although the rule of *Luce* is binding on the federal courts, there is no requirement that it be applied in Michigan. However, because the need and rationale for the *Luce* rule in federal courts are equally applicable in Michigan courts, it follows that a Michigan defendant must testify in order to preserve for review the issue of improper impeachment by prior conviction.

3. Three factors are to be considered in determining whether a judicially created rule of law is to be applied retroactively: the purpose of the new rule, the general reliance on the old rule, and the effect of the new rule on the administration of justice. Where a defendant has done everything under an old rule to preserve an issue, the reliance outweighs other factors favoring retroactive application. However, in this case, the defendant did not do all that was required to preserve the issue. He did not testify, nor did he express an intention to testify or outline the nature of his proposed testimony, thus waiving review of the issue. It cannot be argued that the defendant was relying on prior law in preserving the issue, and thus retroactive application of *Luce* will not result in undue harshness.

4. The *Luce* rule will apply in any case tried on or after November 1, 1988. In cases then pending on appeal in which the defendant testified at trial or expressed an intention to testify if his prior record was excluded and stated the nature of his testimony, review of the impeachment issue is preserved.

Affirmed.

Justice BRICKLEY, concurring in part and dissenting in part, agreed that an accused must testify at trial in order to preserve for review the issue of improper impeachment by prior convictions, but would apply the rule only prospectively, beginning November 1, 1988. In this case, prior law, which required that

to preserve the issue for appeal a defendant had to object to introduction of evidence of prior convictions or move for its exclusion, should be applied. Because the defendant did object to such admission, the case should be remanded to the Court of Appeals for a determination whether the admission was erroneous.

Justice CAVANAGH, concurring in part and dissenting in part, stated that while the defendant's conviction should be affirmed, a defendant need not testify at trial to preserve a claim of improper impeachment by a prior conviction for review under MRE 609. The rule of *Luce v United States,* 469 US 38 (1984), requiring such testimony, has no appeal in fairness, logic, or consistency with this Court's prior decisions.

Implicit in the Fifth Amendment guarantee that no person shall be compelled in any criminal case to be a witness against himself is the guarantee that no penalty, sanction, or disadvantage to the defendant shall flow from a decision not to testify at trial. A defendant must pay no court-imposed price for the exercise of the constitutional privilege not to testify. Under *Luce,* a defendant who elects not to testify at trial is denied the right on appeal to raise what may be a substantial issue. If a court can know the precise nature of a defendant's testimony only by hearing a defendant's actual trial testimony, then motions in limine would have no meaning. Contrary to the implications of *Luce,* such motions and offers of proof are an efficient means of avoiding trial delays regarding the admissibility of potentially inflammatory evidence, and litigants are encouraged to use them because the motions allow the trial judge time to decide the issue without interrupting trial. Where a reviewing court finds that a defendant was improperly threatened with impeachment by prior convictions following a timely but unsuccessful motion in limine, the court normally should assume that the defendant's decision not to testify was out of fear of the impeachment.

In this case, the defendant's prior burglary conviction was probative of his credibility and to that extent was properly admitted.

Justice LEVIN, joined by Justice ARCHER, stated that while a defendant, consistent with the Fifth Amendment privilege against self-incrimination, properly may be required to testify in order to preserve for review the issue of improper impeachment by prior conviction, the defendant should be permitted to preserve the issue for review by testifying either in the presence or outside the presence of the jury. Permitting a defendant, who will not testify in the presence of the jury absent a

revision of the trial court's initial ruling regarding use of a prior conviction or a change in the prosecutor's position, to preserve for appeal a challenge to the correctness of the court's ruling by testifying outside the presence of the jury, would work just as well as or better than requiring testimony only in the presence of the jury in aiding both the trial court and the appellate courts in weighing any prejudicial effect against the probative value of allowing admission of a past conviction record. The determination of the harmlessness of an error more readily would be made on appeal where the defendant testifies on a separate record. The appellate court would have no need to consider the effect of an erroneous admission of a prior conviction record and could confine its inquiry simply to whether the defendant's testimony might have created a reasonable doubt.

    161 Mich App 1; 410 NW2d 282 (1987) affirmed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek*) for the defendant.

RILEY, C.J. The issues in this case are whether we should require a defendant to testify at trial to preserve for review the issue of improper impeachment by prior convictions, and, if so, whether such a requirement should have prospective application only.

We find that the rationale underlying the above rule is sound, and hold that today's decision will apply in any case tried after the release date of this opinion. We further hold that, in cases now pending on appeal, review of the impeachment issue is preserved: 1) if the defendant had in fact testified at trial, or 2) if the defendant had expressed his intention to testify in the event his

prior record was excluded and had stated the nature of his expected testimony. In the instant case, defendant did not testify, nor did he express his intention to testify or outline the nature of his proposed testimony. Thus, defendant has waived review of the issue.

### FACTS AND PROCEEDINGS

Defendant was convicted by a jury in Wayne Circuit Court of four counts of first-degree criminal sexual conduct, MCL 750.520b(1); MSA 28.788(2)(1), and of armed robbery, MCL 750.529; MSA 28.797. The judge sentenced defendant to five concurrent prison terms of forty to sixty years.

The victim testified that on October 16, 1984, at approximately 6:15 P.M., she was at a car wash vacuuming the floorboard of her automobile. Two assailants grabbed the back of her hair, pulled her from the automobile, and held a knife to her throat. The victim later identified her assailants as defendant, Robert Finley, and Thomas Vaughn. The men forced the victim into her car and proceeded to drive to several locations, alternately subjecting the victim to repeated acts of oral, anal, and vaginal intercourse. During the course of these events, defendant and Vaughn took approximately seventeen dollars from the victim to pay for gasoline, as well as several articles of jewelry.

Defendant and Vaughn eventually abandoned the victim on the side of an expressway and drove off in her car. The victim flagged down a passing motorist who took her to a nearby police station.

Defendant was arrested after the victim identified him from photographs. The victim also identified Vaughn, who faced charges as a codefendant but died before trial commenced.

On the first day of trial, defendant made a

motion in limine to prevent the prosecution from using his prior felony conviction to impeach him if he testified. Approximately four years before trial, defendant had been convicted in Kentucky of burglary. Defendant did not express his intention to testify if his felony conviction was excluded. Nor did defendant inform the court of the expected nature of his testimony.

The trial court denied defendant's motion, apparently finding that the similarity of the prior burglary conviction to the armed robbery charge militated in favor of admission rather than exclusion. Defendant did not testify at trial.

On appeal, defendant argued that the trial court incorrectly weighed the similarity factor as favoring admission. See *People v Baldwin,* 405 Mich 550; 275 NW2d 253 (1979) (holding that similarity weighs against admissibility). The Court of Appeals agreed with defendant but declined to reverse his conviction. *People v Finley,* 161 Mich App 1; 410 NW2d 282 (1987).

Instead, the Court adopted the rule of *Luce v United States,* 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984), which requires that in order to preserve the issue of improper impeachment by prior convictions, a defendant must testify at trial. In this case, since defendant did not testify, the Court held that the issue was not preserved for review.

We granted leave to appeal on defendant's application, limited to the issues whether this Court should adopt the *Luce* requirement, and, if so, whether that requirement should have prospective application only. 429 Mich 894 (1988).

I

ANALYSIS

Under the Federal Rules of Evidence, the use of prior convictions to impeach a defendant's testi-

mony is governed by FRE 609(a).[1] In most cases, the judge will be required to balance the probative value of admitting the prior conviction with the prejudicial effect to the defendant. Where the probative value outweighs the prejudicial effect, the judge must admit the prior conviction.

The purpose of the *Luce* rule is to provide a mechanism for meaningful appellate review of the impeachment decision. In fact, the straightforward logic of *Luce* not grasped by either dissent is that as to evidentiary rulings, error does not occur until error occurs; that is, until the evidence is admitted. Obviously, in other contexts, if an offer of proof is made and the court erroneously permits the introduction of hearsay, character evidence, similar acts, or the myriad of evidence objectionable under the MRE, there is no error requiring reversal unless the evidence actually is introduced. Unless the defendant actually testifies, a number of questions remain open to speculation:

> Any possible harm flowing from a district court's in limine ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound

---

[1] FRE 609(a) provides:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

judicial discretion, to alter a previous in limine ruling. On a record such as here, it would be a matter of conjecture whether the District Court would have allowed the Government to attack petitioner's credibility at trial by means of the prior conviction. [*Luce, supra* at 41-42.]

The *Luce* Court also noted that the prosecutor may not have attempted to impeach the defendant with the prior conviction. Where the case against the defendant is strong, or other avenues of impeachment are available, it is possible that the defendant's prior record would not have been used. *Luce, supra* at 42.

In addition, a defendant's decision not to testify generally is based on many factors, no one of which is determinative. A reviewing court cannot assume that the defendant decided not to testify out of fear of impeachment by a prior conviction. *Id.* The Court rejected the suggestion that a defendant may state an intention to testify if the court grants the motion in limine because such a commitment is difficult to enforce. *Id.*

In the event that the trial judge incorrectly allows impeachment by prior conviction, the *Luce* rule enhances review of the harmless error issue:

> Were in limine rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying. Requiring that a defendant testify in order to preserve Rule 609(a) claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction. [*Luce, supra* at 42.]

A ruling in limine on impeachment by prior convictions does not present constitutional implications. *Id.* at 43. As such, while *Luce* is binding on the federal courts, we are not required to apply its holding in Michigan courts. See *People v Turner,* 390 Mich 7, 19; 210 NW2d 336 (1973). However, as noted in *People v Allen,* 429 Mich 558, 636, 637; 420 NW2d 499 (1988) (Riley, C.J., dissenting), an overwhelming majority of states deciding the issue have adopted the *Luce* rule.[2]

At the time of trial, the Michigan rule was similar to the federal rule.[3] However, very recently, this Court substantially revised MRE 609.[4]

[2] See the cases cited in *Allen, supra* at 637, n 14. See also *People v Whitehead,* 116 Ill 2d 425; 508 NE2d 687 (1987); *Reed v Commonwealth,* 366 SE2d 274 (Va App, 1988); but see *State v Whitehead,* 104 NJ 353; 517 A2d 373 (1986) (reversing one of the cases cited in *Allen, supra* at 637, n 14).

[3] At the time of trial in this case, MRE 609 provided in pertinent part:

General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination.

[4] The relevant sections of MRE 609 now provide:

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of

In *Allen,* a majority of this Court created a new framework with which to analyze the issue of impeachment by prior conviction. The Court established three categories of prior convictions: those inherently probative of truth or veracity are automatically admitted; those not inherently probative of truth or veracity are automatically excluded; and those involving a theft component are to be admitted or excluded at the trial judge's discretion.

The *Allen* Court also clarified the balancing factors to be considered where the prior conviction involved a theft component. The judge must determine whether the probative value of admitting the prior conviction would outweigh the prejudicial effect to defendant. In determining the probative value of the conviction, the judge must objectively consider only the vintage of the prior conviction and its indicia of veracity. *Allen, supra* at 606. The prejudicial effect must be determined by considering only the "similarity [of the prior conviction] to the charged offense and the importance of the defendant's testimony to the decisional process . . . ."[5] *Id.*

---

one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

(b) Determining probative value and prejudicial effect. For purposes of the probative value determination required by subrule (a)(2)(B), the court shall consider only the age of the conviction and the degree to which a conviction of the crime is indicative of veracity. If a determination of prejudicial effect is required, the court shall consider only the conviction's similarity to the charged offense and the possible effects on the decisional process if admitting the evidence causes the defendant to elect not to testify. The court must articulate, on the record, the analysis of each factor. [429 Mich cv-cvi (1988).]

[5] The *Allen* Court held that the "bright line" aspect of its decision

Defendant argues that the rules and practice of impeachment by prior convictions in Michigan are so dissimilar to the procedure in the federal system that the *Luce* rule is unnecessary. This Court's decision in *Allen* results in a more limited degree of discretion in the trial court than under the federal rules. As such, while appeals in the federal system will usually involve an abuse of discretion, under *Allen,* the issue on appeal will usually be whether the judge erroneously determined that a prior conviction fell within one of the "bright line" categories. Defendant's testimony is unnecessary to determine this question on appeal.

Furthermore, defendant argues that federal practice is different than Michigan practice because under the federal rules, the trial judge may defer ruling on the impeachment question until *after* the defendant actually testifies. However, in Michigan, the judge must rule on the impeachment question *before* the defendant testifies. See *People v Lytal,* 415 Mich 603, 609-610; 329 NW2d 738 (1982). Thus, since the judge must decide the question before hearing a defendant's testimony, defendant argues that a primary rationale underlying the *Luce* rule is undermined.

Defendant suggests that in light of these differences, an alternative procedure, such as described in *United States v Cook,* 608 F2d 1175 (CA 9, 1979), cert den 444 US 1034 (1980), would be sufficient in Michigan. In *Cook,* the court adopted a two-part requirement in order to preserve the issue for appeal. The defendant must express an intention to testify if his prior convictions are excluded. Further, the defendant must sufficiently describe the nature of his testimony for the trial

would have only prospective application, taking effect March 1, 1988. *Id.* at 609. The clarified balancing test was to have limited retroactive application. *Id.*

and appellate courts to decide the balancing question. *Id.* at 1186.

We agree with defendant that there are significant differences between practice in Michigan and in the federal courts. However, we disagree that those differences warrant an alternate procedure. The difficulties remedied by the *Luce* rule are, for the most part, equally present under Michigan practice.

The primary purpose of the *Luce* rule is to facilitate appellate review by requiring a fully developed factual record upon which to examine the trial judge's impeachment decision, and, if erroneous, to decide whether that error was harmless. *Luce* was not necessarily intended to benefit the trial judge in reaching the impeachment decision in the first instance. While there may be a peripheral benefit at the trial level as the judge may change the impeachment decision after hearing a defendant's testimony, that benefit is tangential to the fundamental purpose of providing meaningful appellate review. Thus, we reject defendant's argument that the Michigan rule requiring the impeachment question to be decided before the accused takes the stand weakens the *Luce* rationale.

We also reject—for the same reasons as the *Luce* Court—defendant's suggestion that a *Cook* statement of intention to testify and offer of proof provide a sufficient basis for appellate review. Defendant's promise to testify would be unenforceable, *Luce, supra* at 41, and there is no guarantee that defendant's trial testimony will mirror the offer of proof. *Id.* at 41, n 5.

Defendant's argument that judicial discretion has been curtailed by *Allen* carries more weight. We agree that *Allen* reduced the scope of discretion on this issue, but disagree with the implicit

conclusion that *Allen* obviates the need for a *Luce* rule.

Of the three categories of prior convictions, the discretionarily admitted or excluded convictions are analyzed in a similar fashion as in federal court. The judge must weigh the probative value versus the prejudicial effect and admit or exclude the conviction as a matter of discretion. Part of that decision requires the judge to determine the importance of the defendant's testimony to the decisional process, which is largely unknowable unless the defendant testifies. With the defendant's testimony on the record, it will be easier for the appellate court to determine what the effect on the decisional process would have been had the defendant not testified.[6] Thus, since admission of theft convictions is similar to the federal practice, there remains the same necessity of an adequate record to provide meaningful appellate review. Accordingly, the *Luce* requirement is equally necessary.

Defendant argues, however, that review of decisions in which the conviction falls within one of the "bright line" categories does not require a developed factual record. As such, in the event of an incorrect decision, an accused would be severely prejudiced because, in order to appeal, the defendant must testify and face the improper impeachment.

At the outset, it should be noted that a decision regarding the category into which a prior convic-

---

[6] The defendant is entitled under *Allen* to have the "effect on the decisional process if [he] does not testify" considered as a factor of prejudice in balancing whether or not to admit evidence of his prior convictions. 429 Mich 602. The instant decision will require the defendant to testify in order to obtain review of the impeachment question. The fact that a defendant did in fact testify should not be regarded as nullifying in the "effect on the decisional process" factor.

tion falls is fairly straightforward, with a rela-
tively small grey area of doubt. Therefore, we do ·
not anticipate a large number of incorrect deci-
sions on this question. It would seem that defen-
dant's fears may be somewhat exaggerated.

However, notwithstanding the above, we reject
defendant's argument on another basis. It is true
that the question whether a conviction falls within
a "bright line" category does not require a defen-
dant's testimony in order to be properly reviewed.
However, for the most part, the rationales under-
lying the *Luce* rule are applicable even where the
prior conviction falls within one of the "bright
line" categories. Any hardship to the defendant
arising out of an incorrect decision is purely specu-
lative in the absence of his testimony. As noted by
the *Luce* Court, a defendant's decision not to tes-
tify is rarely premised solely on whether prior
convictions will be used for impeachment. *Luce,*
*supra* at 42. Further, the prosecutor may have
decided to use other means to impeach the defen-
dant. *Id.* Finally, without defendant's testimony, a
reviewing court is limited in determining the
harmless error question.

It should also be noted that the Federal Rules of
Evidence, under which *Luce* was decided, contain
a "bright line" component similar to one category
of the revised Michigan rule. Under FRE 609(a),[7]
any conviction, be it felony or misdemeanor, *shall*
be admitted if the crime involved dishonesty or
false statement. However, despite this "bright
line" component of the federal rule, the Supreme
Court determined that defendant's testimony is
necessary to facilitate review. Further, a number
of states with limited judicial discretion on the
issue of admission of prior convictions have

[7] See n 1 for text of FRE 609(a).

adopted the *Luce* rule.[8] Accordingly, we disagree with defendant that the "bright line" aspects of the new Michigan rule render the *Luce* rule unnecessary.

Furthermore, despite the suggestions in Justice CAVANAGH's opinion, it cannot be seriously claimed that the Fifth Amendment bars adoption of *Luce.* Whatever one's views of the philosophy of particular justices, in *Luce,* all eight justices agreed that the issue did not involve a Fifth Amendment challenge. The issue presented is what procedural steps are necessary to preserve an issue for appeal, a matter that no more levies a "court-imposed price" for the exercise of a constitutional privilege than procedural rules requiring the timely assertion of other constitutional rights.

Justice LEVIN's approach purports to meet the *Luce* objectives while imposing on the trial court the burden of conducting a minitrial on the evidentiary issue; whether or not the defendant actually intends to take the stand, it is predictable that such a hearing would always take place in order to protect the claim on appeal. Thus, Justice LEVIN's reverse-*Luce* proposal does not meet the Supreme Court's observation in *Luce* that "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor' (citation omitted), a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify,"[9] nor will it "tend to discourage making such motions solely to 'plant' reversible error in the event of conviction." *Id.* at 42.

---

[8] Compare the jurisdictions surveyed in *Allen, supra* at 597-599, ns 19-27, with those cited at 637, n 14 (RILEY, C.J., dissenting) and n 2 of this opinion.

[9] Indeed, data in Kalven & Zeisel, *The American Jury* (Boston: Little, Brown & Co, 1923), establish that nine percent of defendants elect not to testify even though they have no record or their record has been suppressed.

Nor, given the fact that a reverse-*Luce* hearing will predictably be held in every case can it be said that the reverse-*Luce* hearing is more efficient than *Luce*. If the reverse-*Luce* hearing is held and the judge decides to permit impeachment, the process must then be repeated in front of the jury. If, at the reverse-*Luce* hearing, the judge determines that impeachment will not be allowed, the process (save impeachment by convictions) will be repeated. If the reverse-*Luce* hearing is held and the defendant breaches his commitment to testify, the hearing testimony will be repeated for the jury. It is only in the rare situation in which the court, at the reverse-*Luce* hearing, determines that the defendant cannot be impeached and thereafter revises its decision after the defendant has testified in the jury's presence and a mistrial has been declared that a reverse-*Luce* hearing could be said to be more efficient; an efficiency that pales in significance when measured against the virtual certainty of a reverse-*Luce* hearing in every case.

In sum, we are persuaded that the need and rationale for the *Luce* rule are applicable in Michigan. We hold that a defendant must testify in order to preserve for review the issue of improper impeachment by prior convictions.

II

The second issue to be decided is whether to apply today's decision retroactively. The federal courts have split on the question whether to apply *Luce* retroactively. In *United States v Givens,* 767 F2d 574 (CA 9, 1985), the Ninth Circuit held that *Luce* would not be applied retroactively. In determining whether to give retroactive effect to a decision, the federal courts consider: 1) whether the decision establishes a new principle of law, 2)

whether retroactive application will promote or retard the purposes of the rule, and 3) whether applying the new decision will produce substantial inequitable results. *Chevron Oil Co v Huson,* 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971). According to the *Givens* court:

> *Luce* establishe[d] a new principle of law which would, if applied retroactively, wreak a substantial inequity by precluding [the defendant] from challenging the admissibility of proof of his prior convictions. Although application of the *Luce* principle to the present case arguably would further the purpose of the rule by providing the trial court with concrete testimony on which to base its ruling . . . , the first and third factors militate so strongly against retroactive application that they outweigh the second factor. [*Givens, supra* at 578.]

The *Givens* Court recognized the inequity of applying *Luce* retroactively in a case where the defendant had relied on the law extant at the time of his trial by expressing his intention to testify if his motion in limine was granted and by stating the nature of his expected testimony. Since the defendant had done everything required at the time of his trial to preserve the issue, the court determined that, as a matter of fairness, *Luce* would not be applied to bar review.[10]

---

[10] The *Givens* court distinguished *United States v DiMatteo,* 716 F2d 1361 (CA 11, 1983), on this basis, stating that the defendant in *DiMatteo* did not rely on the law in effect at the time of his trial in attempting to preserve the issue for review. *Givens, supra* at 578.

In *DiMatteo,* the court reversed the defendant's conviction on the basis of an erroneous decision regarding the impeachment of one of defendant's witnesses under FRE 608(b). The defendant did not call that witness at trial. The United States Supreme Court vacated the original *DiMatteo* decision and remanded for reconsideration in light of *Luce.*

The *Givens* decision was released on July 29, 1985. It appears that the *Givens* court was unaware that the decision in *DiMatteo (On Remand),* 759 F2d 831 (CA 11, 1985), was released May 6, 1985, in

Conversely, in *United States v Dunbar*, 767 F2d 72 (CA 3, 1985), the Third Circuit determined that *Luce* would be applied retroactively. Applying the *Chevron* factors, the court determined that *Luce* did not establish a new procedure by which to preserve the issue because other circuits had already adopted the requirement at the time of the defendant's trial. *Id.* at 74. See, e.g., *United States v Luce*, 713 F2d 1236 (CA 6, 1983). Thus, the defendant could not be said to have been surprised by the *Luce* decision. The court also determined that the purpose of the *Luce* rule—to reduce speculative appellate review—would be advanced by applying the rule in that case. Finally, the court determined that applying *Luce* retroactively resulted in no hardship to the defendant "since he had the opportunity to testify and could not have been relying on any existing law to the effect that he would be permitted to appeal." *Dunbar, supra* at 75. At trial, the defendant did not testify, nor did he state his intention to testify in the event that he was successful in excluding his prior record.

We discussed the retroactive application of *Luce* in *Allen, supra* at 638:

> This Court has held that three factors must be considered in determining whether a judicially created rule of law should be applied retroactively.
> [1] the purpose of the new rule,
> [2] the general reliance on the old rule, and
> [3] the effect on the administration of justice.
> [*People v Nixon,* 421 Mich 79, 85; 364 NW2d 593 (1984).]

that the *Givens* court makes no reference to the later *DiMatteo* opinion. *Givens* cites only the original *DiMatteo* decision and remand order from the United States Supreme Court. On remand, the *DiMatteo* court determined that the *Luce* rule applies to review of decisions under FRE 608(b) as well as FRE 609(a).

I believe that the defendants' reliance on the old rule outweighs other considerations favoring retroactive application. The defendants have done everything necessary to preserve the issue under the old rule. Adoption of the *Luce* rule was not even reasonably foreseeable at the time of their trials. Under these circumstances, I believe it would be unduly harsh to apply the *Luce* rule to these defendants. Therefore, I would apply the rule only prospectively, i.e., to trials beginning after this decision is final. [RILEY, C.J., dissenting.]

In this case, defendant did not do all that was required to preserve the issue. Recently, the Court of Appeals expressly held that absent a statement of intention to testify in the event that prior convictions are excluded, and an outline of the nature of the expected testimony, a defendant waives appellate review of the issue. *People v Richard Johnson,* 167 Mich App 637; 423 NW2d 300 (1988). While *Richard Johnson* was decided approximately three years after defendant's trial in this case, the Court relied upon cases which had been decided well before defendant's trial. See *People v Casey,* 120 Mich App 690; 327 NW2d 337 (1982), and *People v Ferrari,* 131 Mich App 621; 345 NW2d 645 (1983). Furthermore, in *People v Jones,* 98 Mich App 421; 296 NW2d 268 (1980), decided approximately five years before defendant's trial, the Court cited the *Cook* procedure with approval. In *People v Thomas Johnson,* 133 Mich App 150; 348 NW2d 716 (1984), the Court declined to review the impeachment issue where the defendant did not outline the nature of his expected testimony. In addition, the *Thomas Johnson* Court cited *Casey, supra,* and *People v Wilson,*

107 Mich App 470; 309 NW2d 584 (1981), which both discussed the *Cook* requirement approvingly.[11]

In *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983), this Court, in dicta, noted the *Cook* procedure, and, while declining to require an offer of proof, stated that such a procedure "has much to commend it." *Id.* at 117. In the absence of a proffer from the defendant, the Court declined to speculate on the effect the defendant's decision not to testify had on the decisional process.

Thus, in light of the decisions in the Court of Appeals and this Court, it cannot be argued that defendant was relying on prior law in preserving the issue. This factor distinguishes the instant case from *Allen* in which the defendants had done everything necessary at the time to preserve the issue.[12] Therefore, application of *Luce* retroactively in this case will not result in the undue harshness which would have resulted from retroactive application in *Allen.*

We hold that the *Luce* rule will apply in any case tried after the release date of this opinion. We further hold that, in cases now pending on appeal, review of the impeachment issue is preserved: 1) if the defendant had in fact testified at trial, or 2) if the defendant had expressed his intention to testify in the event his prior record was excluded and had stated the nature of his expected testimony. In the instant case, defendant did not testify, nor did he express his intention to testify or outline the nature of his proposed testi-

[11] Compare the above cases with *People v Frey,* 168 Mich App 310; 424 NW2d 43 (1988), in which the Court declined to apply the *Luce* rule in the absence of a definitive answer from this Court in *Allen, supra.* However, *Frey* does not indicate whether the defendant had followed the *Cook* procedures.

[12] The discussion in *Allen* reveals that defendants Pedrin and Allen proffered to the trial court the expected nature of their testimony. See *Allen, supra* at 646-647 (RILEY, C.J., dissenting). Defendants Gray and Brooks testified at trial. *Id.* at 624-625.

mony. Thus, defendant has waived review of the
issue.

CONCLUSION

We find that the rationales underlying the *Luce*
rule are equally applicable to Michigan practice,
and hold that to preserve the issue of improper
impeachment by prior convictions, the accused
must testify at trial. The rule adopted today will
apply in any case tried after the date of this
opinion. Furthermore, in cases now pending on
appeal, review of the impeachment issue is pre-
served: 1) if the defendant had in fact testified at
trial, or 2) if the defendant had expressed his
intention to testify in the event his prior record
was excluded and had stated the nature of his
expected testimony. In the instant case, defendant
did not testify, nor did he express his intention to
testify or outline the nature of his proposed testi-
mony. Thus, defendant has waived review of the
issue. We affirm the decision of the the Court of
Appeals.

BOYLE and GRIFFIN, JJ., concurred with RILEY,
C.J.

BRICKLEY, J. (*concurring in part and dissenting
in part*). I concur in the adoption of the rule
defined in *Luce v United States,* 469 US 38; 105 S
Ct 460; 83 L Ed 2d 443 (1984). I write, however, to
express my disagreement with the lead opinion's
disposition of the instant case and with certain
other elements of that opinion.

The lead opinion states that "[w]e hold that the
*Luce* rule will apply in any case tried after the
release date of this opinion," and permits review
in some cases pending on appeal even where the

defendant did not testify. I therefore conclude that *Luce* is being given purely prospective application, and I concur with that understanding. I would not, however, apply *Luce* from the day the Court's decision is issued, but rather from November 1, 1988, to ensure that attorneys representing criminal defendants will be made aware of this new procedural requirement.

The application of *Luce* being prospective, we must then decide the instant case, and the cases we hold in abeyance for this decision, on the basis of the law as it existed prior to today's decision. The lead opinion fails to state what it believed that law to be, but I think it is fair to say that it suggests that the rules defined in *United States v Cook,* 608 F2d 1175 (CA 9, 1979), had been adopted in Michigan prior to today's decision. I do not agree.

The lead opinion cites our decision in *People v Wakeford,* 418 Mich 95, 117; 341 NW2d 68 (1983), where we stated that the *Cook* procedure "has much to commend it." However, we also stated in *Wakeford* that "we do not today make such a procedure mandatory." *Id.* I do not see how an explicit refusal to adopt a procedural requirement can be read as an adoption of that requirement, however laudatory it may be. This Court has not discussed *Cook* since the *Wakeford* decision, and it cannot fairly be said that by any action of this Court the *Cook* requirements had been adopted as a preservation requirement.

The lead opinion also cites *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), as an example in which the *Cook* requirements were met. It states that in *Allen* "defendants had done everything necessary at the time to preserve the issue" and in an accompanying footnote states:

The discussion in *Allen* reveals that defendants Pedrin and Allen proffered to the trial court the expected nature of their testimony. . . . Defendants Gray and Brooks testified at trial.

The lead opinion fails to note that in *Allen* defendant Smith did not testify, and the *Allen* opinion does not indicate that he proffered to the trial court the expected nature of his testimony. Nevertheless, his claim was reviewed. Similarly, although *Allen* makes clear that Pedrin and Allen made proffers, there is nothing in the opinion to suggest that they also "establish[ed] on the record that [they would] in fact take the stand and testify if [the] challenged prior convictions [were] excluded" 608 F2d 1186. Finally, even if all the *Allen* defendants had complied with *Cook,* that could not be seen as an adoption of *Cook* by this Court.

Three Court of Appeals cases are also cited for the principle that *Cook* was the law in Michigan. These cases do in fact stand for the proposition since they held that review would not be provided where *Cook* had not been complied with. However, I do not believe that these isolated cases, one of which was decided after defendant's trial, can be viewed as representing the general body of Michigan law on this question. Numerous MRE 609(a) cases, including many in which defendant failed to testify, have been reviewed without any mention of the *Cook* test. These opinions have noted only that the defendant moved for exclusion of his prior convictions or objected to their admission. See, e.g., *People v Woods,* 416 Mich 581; 331 NW2d 707 (1982); *People v Hughes,* 411 Mich 517; 309 NW2d 525 (1981); *People v Steele,* 115 Mich App 758; 321 NW2d 804 (1982); *People v Kramer,* 108 Mich App 240; 310 NW2d 347 (1981); *People v Gary Johnson,*

105 Mich App 332; 306 NW2d 501 (1981). In addition, there are other cases in which review was denied for failure to preserve the issue, but in those cases the failure to preserve was found in the lack of objection, not in a failure to state an intention to testify or make a proffer of an outline of the testimony. *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975); *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974); *People v Gaines,* 129 Mich App 439; 341 NW2d 519 (1983); *People v Shrader,* 88 Mich App 680; 279 NW2d 47 (1979); *People v Holt,* 54 Mich App 60; 220 NW2d 205 (1974); *People v Averill,* 59 Mich App 507; 229 NW2d 827 (1975); *People v Jones,* 44 Mich App 633; 205 NW2d 611 (1973).

I thus conclude that prior to today's adoption of *Luce,* the rule in Michigan was that in order to preserve for appeal the issue of impeachment by prior conviction, a defendant had to object to its introduction or move for its exclusion. Defendant Finley did object to the admission of this evidence. I therefore would remand this case to the Court of Appeals for review of his claim that MRE 609 was violated. See *People· v Allen,* 429 Mich 558; 420 NW2d 499 (1988).

My second disagreement with the lead opinion is with some aspects of its criticism of Justice LEV-IN's dissenting opinion. The lead opinion states that

whether or not the defendant actually intends to take the stand, it is predictable that such a hearing would always take place in order to protect the claim on appeal [*ante,* p 520],

and that

a reverse-*Luce* hearing will predictably be held in every case. [*Ante,* p 521.]

I believe these statements mischaracterize Justice
Levin's opinion. His proposal would still require
the defendant to commit himself to testify before
the jury if the judge ruled in his favor on the
admission of a prior conviction, and, if a defendant
refused to testify after a ruling in his favor, his
proffered testimony would be read to the jury. I
believe it is therefore incorrect to suggest that a
defendant who does not in fact want to take the
stand, but seeks only to create an appellate issue,
would avail himself of the procedure suggested in
Justice Levin's opinion. Once the defendant took
the stand in a "reverse-*Luce* hearing," he would
have no option but to have the jury hear his
testimony and cross-examination. While this proce-
dure may suffer from inherent inefficiencies, hav-
ing such a hearing occur in every case is not one
of them, nor is there any danger that had we
adopted this approach that it would have provided
a vehicle for defendants to create an "appellate
parachute."

My third disagreement with the lead opinion is
its inclusion of what I believe is overly broad
dictum. The lead opinion states:

> [T]he straightforward logic of *Luce* not grasped
> by either dissent is that as to evidentiary rulings,
> error does not occur until error occurs; that is,
> until the evidence is admitted. Obviously, in other
> contexts, if an offer of proof is made and the court
> erroneously permits the introduction of hearsay,
> character evidence, similar acts, or the myriad of
> evidence objectionable under the MRE, there is no
> error requiring reversal unless the evidence actu-
> ally is introduced. [*Ante,* p 512.]

The lead opinion cites no authority to support this
sweeping dictum, the future readings of which

cannot be foreseen. In addition, the notion that reviewable error does not occur until admission of the challenged evidence does not square with actual practice. Interlocutory appeals are regularly taken on evidentiary questions and pretrial rulings are often deemed erroneous in spite of the fact that their effect has not yet been felt at trial. Error can also occur at trial in varying forms, and the Court should not be so quick to define a universal principle, particularly since the specific grounds for the adoption of the *Luce* requirement are so clearly explained by the Chief Justice.

In conclusion, I concur in the adoption of the *Luce* rule, and believe its application should be strictly prospective, beginning November 1, 1988. In my view, therefore, the instant case must be decided under the preservation requirements in force before today's decision. Since defendant objected to the admission of his prior conviction, I would remand this case to the Court of Appeals to determine if the admission of that conviction was erroneous. Lastly, as just described, I do not concur in two particular passages of the lead opinion.

CAVANAGH, J. (*concurring in part and dissenting in part*). I agree with the majority's conclusion that the defendant's conviction should be affirmed. I dissent, however, from the majority's holding that a defendant must testify at trial to preserve for review a claim of improper impeachment with a prior conviction under MRE 609.

### REJECTION OF THE *LUCE* RULE FOR MICHIGAN PRACTICE

Until today, it has been well settled in Michigan that a defendant need not testify to preserve the issue of impeachment by prior conviction for ap-

pellate review under MRE 609.[1] See, e.g., *People v*

---

[1] Defendant was tried in February and March of 1985. At the time of his trial, MRE 609 provided:

RULE 609. IMPEACHMENT BY EVIDENCE OF CONVICTION OF CRIME.

(a) General rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if

(1) the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or the crime involved theft, dishonesty or false statement, regardless of the punishment, and

(2) the court determines that the probative value of admitting this evidence on the issue of credibility outweighs its prejudicial effect and articulates on the record the factors considered in making the determination.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

(c) Effect of pardon, annulment, or certificate of rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or (2) the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

(d) Juvenile adjudications. Evidence of juvenile adjudications is generally not admissible under this rule, except in subsequent cases against the same child in the juvenile division of a probate court. The court may, however, in a criminal case or a juvenile proceeding against the child allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission is necessary for a fair determination of the case or proceeding.

(e) Pendency of appeal. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

As discussed in the lead opinion, *People v Allen*, 429 Mich 558; 420 NW2d 499 (1988), amended MRE 609 to vest the trial court with discretion solely regarding the admissibility of most theft offenses and to provide bright-line rules for all other prior convictions. The amended rule automatically admits prior convictions containing an

*Allen,* 429 Mich 558, 612; 420 NW2d 499 (1988) (defendants Pedrin, Allen, and Smith); *People v Wakeford,* 418 Mich 95; 341 NW2d 68 (1983); *People v Williams,* 413 Mich 72, 74; 318 NW2d 462 (1982); *People v Baldwin,* 405 Mich 550, 552; 275 NW2d 253 (1979) (defendant Woolfolk).

Now the people ask us to overturn this rule on the basis of *Luce v United States,* 469 US 38, 43; 105 S Ct 460; 83 L Ed 2d 443 (1984), which declared a new rule for the federal courts:

> We hold that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify.

With all due respect to the United States Supreme Court, I would reject this rule for Michigan practice.[2] It has no appeal in fairness, logic, or consistency with this Court's prior decisions.

I

Let us start with the language of the Fifth Amendment itself, which states in part:

> No person . . . shall be compelled in any criminal case to be a witness against himself . . . . [US Const, Am V.]

Implicit in this constitutional guarantee is that no

element of dishonesty or false statement and automatically excludes those which do not. The amendment applies in cases tried after March 1, 1988. The lead opinion sets forth the relevant portion of the amended rule in n 4.

[2] Strictly speaking, the expansive ruling in *Luce* was dictum. Since the defendant in *Luce* made no "proffer to the court as to what his testimony would be," 469 US 39, existing federal procedural law would have provided a sufficient basis to refuse to consider the FRE 609 issue. The Court instead reached out to hold that the lack of proffer was irrelevant (footnote 5), and that the defendant's procedural default was his failure to testify at trial.

penalty, no sanction, no disadvantage to the defendant shall flow from his decision not to testify at trial.

*Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965), reh den 381 US 957 (1965), held unconstitutional a statute permitting the prosecution to comment on the failure of the defendant to testify at his criminal trial. *Carter v Kentucky,* 450 US 288; 101 S Ct 1112; 67 L Ed 2d 241 (1981), held that the Fifth Amendment required the court, upon the request of a nontestifying defendant, to instruct the jury not to draw an adverse inference from the failure of the defendant to testify. The central theme of both cases was "that *a defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify."* 450 US 301. (Emphasis added.)

Similarly, the Court in *Lefkowitz v Cunningham,* 431 US 801, 805; 97 S Ct 2132; 53 L Ed 2d 1 (1977), observed:

> [O]ur cases have established that a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.

The *Luce* rule exacts a heavy price from the defendant for electing not to testify at his trial. He is denied the right on appeal to raise what may be a substantial issue. If *Luce* intended to overrule the holdings of *Griffin, Carter, Lefkowitz,* and similar cases, that "a defendant must pay no court-imposed price" for failing to testify, a clearer statement from the Court that it is doing so is warranted. I would hold that the Fifth Amendment and the Michigan Constitution[3] bar us from adopting *Luce.*

---

[3] See Const 1963, art 1, § 17.

II

Further, *Luce*'s requirement that a defendant testify to preserve the impeachment issue is inconsistent with the spirit, if not the precise holding, of two of the Supreme Court's own decisions. In *Brooks v Tennessee,* 406 US 605; 92 S Ct 1891; 32 L Ed 2d 358 (1972), relying on the Fifth Amendment, the defendant challenged the constitutionality of a Tennessee statute which required a defendant to be his own first witness if he were to take the stand at all. The defendant in that case elected not to testify, yet the Supreme Court was able to reach the constitutional issue. It struck down the Tennessee statute and reversed the defendant's conviction.

In *New Jersey v Portash,* 440 US 450; 99 S Ct 1292; 59 L Ed 2d 501 (1979), the defendant chose not to testify at his criminal trial when the trial judge refused to rule in limine that the prosecution could not use the defendant's grand jury testimony which had been given under a grant of transactional immunity. The Court rejected the state's argument that the issue was not preserved for review because the defendant failed to testify:

> The State contends that the issue presented by Portash is abstract and hypothetical because he did not, in fact, become a witness. Portash could have taken the stand, testified, objected to the prosecution's use of the immunized testimony to impeach him, and appealed any subsequent conviction. Absent that, the State would have us hold that the constitutional question was not and is not presented. This argument must be rejected. First, it is clear that although the trial judge was concerned about making a ruling before specific questions were asked, he did rule on the merits of the constitutional question. [*Id.,* 454.]

The *Luce* Court attempted to distinguish these two cases on the ground that they related to Fifth Amendment challenges to state court rulings that operated to dissuade defendants from testifying, while *Luce* dealt with a federal court's preliminary ruling under FRE 609. 469 US 42-43. The Court did not articulate any reason for distinguishing between constitutional claims and evidentiary claims in requiring a defendant to testify to preserve his right of appellate review for the latter. We see no basis for such distinction. As long as it is clear that the trial judge did "rule on the merits," the ruling should be subject to appellate review the same as any other interlocutory ruling.

The other rationales offered by the *Luce* Court to support its ruling also do not survive close scrutiny.

III

In reaching its decision, the *Luce* Court explained why it believed the defendant's trial testimony was required:

> A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under [FRE] 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify. [469 US 41.]

I would reject this premise. If a court can "know the precise nature of the defendant's testimony" only by hearing a defendant's actual trial testimony, then motions in limine would have no

meaning. Such a preliminary ruling, so *Luce* seems to say, is meaningless because the court is ruling in the dark, and no matter how specific and detailed, an offer of proof will not dispel the darkness. If the *Luce* Court found hearings in limine unhelpful in resolving FRE 609 claims, it should have, to be consistent, accompanied its ruling with a firm directive to trial judges not to rule in limine on this issue, but to reserve such rulings until after the defendant had testified on direct examination.[4]

Contrary to the implications of *Luce,* however, motions in limine and offers of proof are an efficient means of avoiding trial delays regarding the admissibility of potentially inflammatory evidence, and litigants are encouraged to use them.[5] The motions allow the trial judge ample time to decide the issue without interrupting trial. In *United States v Cook,* 608 F2d 1175, 1186 (CA 9, 1979), which involved an impeachment issue parallel to the present case, the court noted:

> Motions in limine have proven their value in litigation. They save jury time, and avoid the waste that sometimes results from haste when side-bar matters have to be urged in the course of

[4] Although it did not say so, surely *Luce* did not require that the court have the cross-examination testimony of the defendant as well as his direct-examination testimony in order to rule.

[5] Even *Luce* seemed to recognize this. In footnote 4 of its opinion, the Court said that rulings in limine had developed in the federal practice pursuant to the inherent authority of the district court to manage the course of trials.

See also *Cook v United States,* 354 F2d 529, 532 (CA 9, 1965), where the court observed:

> Why the government, thinking in good faith the testimony was admissible, chose the dangerous path of referring to it in the opening statement, rather than by the *usual route of an offer of proof outside the jury's presence,* is difficult to understand. [Emphasis added.]

the trial. To persist in holding that rulings made in advance of trial are unreviewable unnecessarily discourages the use of such motions.

If a judge must await the defendant's trial testimony before making his ruling, inevitably there would be a delay at the conclusion of the defendant's direct examination to consider the issue. It would not be long before some sophisticated jurors would assume that such a delay meant that the defendant had a criminal record. This would be unfair not only to a defendant with a record, but even more so to one without a record whose cross-examination was delayed for other, unrelated reasons.

The *Luce* Court also said that a proffer of testimony would be no substitute for the actual trial testimony of the defendant because it could "for any number of reasons, differ from the proffer."[6] Proffers of evidence or offers of proof under FRE 103 and MRE 103 are well-recognized procedures in both civil and criminal practice, and we have made significant rulings on the basis of them. It may be that an offer of proof will vary significantly from the evidence subsequently introduced at trial, but it is the experience of the profession that this would be the exception rather than the rule. It is telling that *Luce* cites not a single instance where an offer of proof and the subsequent trial evidence in any setting, impeachment or otherwise, varied materially. At best, *Luce* premised a rule for all cases on the exceptional rather than the norm. I would decline to plow under the wheat field to destroy a few weeds.

For at least a hundred years, the federal courts have assumed that offers of proof have been made in good faith. *Scotland Co v Hill,* 112 US 183, 186;

---

[6] 469 US 41, n 5.

5 S Ct 93; 28 L Ed 692 (1884), held that if a trial court rejects an offer of proof and

> allows a bill of exceptions which shows that the offer was actually made and refused, and there is nothing else in the record to indicate bad faith, an appellate court must assume that the proof could have been made, and govern itself accordingly.

In *United States v Clemente,* 482 F Supp 102 (SD NY, 1979), the defendants moved in United States District Court to suppress evidence obtained by the government through electronic surveillance. The court noted that the scope of permissible surveillance was to be measured in relation to the magnitude of the alleged illegal activity, and found:

> The alleged scope of defendants' activities is truly massive. At this stage in the proceedings, we deal solely with the allegations of the indictment and *the Government's offer of proof* submitted in opposition to defendants' motions to sever. We have and venture no opinion as to the validity of these allegations except to observe that *no basis has been offered to question the good faith of the Government in their* [*sic*] *assertion.* [*Id.,* 107. Emphasis added.]

If we are to reject offers of proof as being unreliable in the area of Rule 609 issues, then why should we not reject them in other areas? If the *Luce* reasoning had been applied in *Clemente,* the government would have been forced to conduct a minitrial before the court could have ruled on the motion for severance. Applying *Luce*'s reasoning generally, the progress of both civil and criminal jury trials would be extensively delayed to consider what presently is more conveniently considered before trial.

Of course, if an offer of proof is made in bad
faith, it usually would not be too difficult to detect
and deal with appropriately.[7] In a civil case, an
offer of proof may be quite complicated, summariz-
ing the testimony of several witnesses and volumi-
nous documents. Even so, the courts are not pre-
vented from detecting offers of proof made in bad
faith. See, e.g., *Bonime v Doyle,* 416 F Supp 1372
(SD NY, 1976). The task is easier in criminal cases
involving a Rule 609 issue. The offer of proof is
factually simple, dealing solely with the testimony
of one witness, the defendant on trial.

IV

In further support of its decision, the *Luce* Court
noted:

When the defendant does not testify, the review-
ing court also has no way of knowing whether the
Government would have sought to impeach with
the prior conviction. If, for example, the Govern-
ment's case is strong, and the defendant is subject
to impeachment by other means, a prosecutor
might elect not to use an arguably inadmissible
prior conviction. [469 US 42.]

This argument is specious. When a prosecutor
opposes a motion in limine in this area, we can
assume that he does so for a clear purpose, i.e., to
use the defendant's prior conviction for the pur-
pose of impeachment. To argue that the govern-
ment might change its mind is speculative at best.
Further, even if it does, the prosecution can easily
make a record of this and preclude the defendant
from raising the prior conviction issue on appeal

[7] *United States v Oakes,* 565 F2d 170, 171 (CA 1, 1977), suggested
without discussion that if an offer of proof turns out to be misleading,
the court may change its ruling and admit the impeaching evidence.
That issue is not before us now.

by clearly renouncing its intent to use the impeaching evidence at any point before the defendant rests his case.

V

The *Luce* Court also said "a reviewing court cannot assume that the adverse ruling [on a Rule 609 motion in limine] motivated a defendant's decision not to testify." 469 US 42. It seems the Court is saying that, absent some proof from the defendant, made in some way unspecified by the Court, it will assume that the defendant chose not to testify for reasons unrelated to the Rule 609 ruling. On the contrary, I would hold that if a reviewing court finds that a defendant was improperly threatened with impeachment by prior convictions (following a timely but unsuccessful motion in limine raising the Rule 609 issue), the reviewing court should normally assume that the defendant's decision not to testify was out of fear of the impeachment.[8]

This rule is not unduly harsh on the prosecution. First, its application does not mandate automatic reversal.[9] Second, many legal scholars, including some past and present members of this Court, believe that in criminal cases the defendant

[8] In *United States v LeBlanc,* 612 F2d 1012, 1014 (CA 6, 1980), the court suggested that a defendant is required to state that he declined to testify out of fear of impeachment. This requirement really adds nothing to the record. Experienced counsel would always make the claim. Others might overlook the formality and risk the loss of a substantial issue on appeal.

[9] In this respect, I disagree with the *Luce* Court that "the appellate court could not logically term 'harmless' an error that presumptively kept the defendant from testifying." 469 US 42. If, for example, the evidence of guilt is overwhelming and the substance of the defendant's offer of proof is presented to the jury through other witnesses, it may well be that any error in allowing impeachment evidence could be considered harmless. See discussion of *People v Wakeford, post,* pp 543-544.

should never be impeached by prior convictions.[10] However, this is not the rule in Michigan. All I would say today is that if the prosecution has a strong case, it has no real need for the impeaching evidence; if it has a weak case, it cannot be said that improper impeaching evidence allowed or threatened to be allowed against the defendant is harmless.

This kind of hard decision making for a prosecutor is not unique to impeaching evidence. For example, 1 ABA Standards for Criminal Justice (2d ed), The Prosecution Function, Commentary on Standard 3-5.6, p 3-83, provides in part:

> A prosecutor should exercise great care in deciding what evidence to use. A strong case should not be jeopardized by introducing evidence that is essentially cumulative but that may bring about a reversal. It is obviously not easy to forgo using reliable and probative evidence when it is at hand, but the prosecutor must do so in many instances. A high level of experienced litigation judgment is often required, and a prosecution office should have its senior litigation lawyers available for consultation on these difficult decisions.

VI

The *Luce* Court also stated:

> Requiring that a defendant testify in order to preserve Rule 609(a) claims . . . will also tend to discourage making such motions solely to "plant" reversible error in the event of conviction. [469 US 42.]

---

[10] In *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), five members of the Court expressed grave doubts about allowing a testifying defendant to be impeached by prior convictions.

Nearly every rule of exclusion based either on the common law or on Fourth, Fifth, and Sixth Amendment rights can be used to " 'plant' reversible error."[11] We should have no objection to a defense counsel in a criminal case vigorously defending his client with every legitimate weapon available. We encourage and indeed require it with our canons of ethics. The remedy of the Court should not be to diminish the protection afforded by Rule 609, but instead to recognize meritless claims of violation of the rule when they are presented. We did just that in *People v Wakeford, supra.*

In *Wakeford,* we had no difficulty assessing a claim of error under MRE 609, even though the defendant did not testify:

> No alibi defense was ever suggested, either before or after the trial judge's ruling. On appeal, defense counsel suggests that the defendant could have testified that he was not attending school at the time the identifying witness and alleged former classmate testified that they had attended school together. However, in light of the unrebutted evidence introduced by the defendant on that point, . . . as well as the overwhelming evidence of guilt, we agree with the Court of Appeals that the error, if any, was harmless beyond a reasonable doubt. [418 Mich 117-118.]

The failure of the defendant to testify neither precluded us from considering the merit of his claim of error nor from rejecting it as being harm-

---

[11] If by "planted" error, the Court meant to refer to invited error, such error of itself is seldom if ever grounds for reversal in either civil or criminal litigation. For example, if a defendant makes no motion in limine, but at trial objects to cross-examination about his prior convictions, he could hardly claim that the mere asking of the question was error in those circumstances. His failure to make a motion in limine would have invited whatever error there may have been.

less. See also our review of defendant Smith's claim in *People v Allen, supra,* 612.

For the reasons discussed in §§ I-VI, I would reject the *Luce* rule in Michigan.

However, as a majority of this Court favors adoption of the rule, I concur in the prospective application stated in the concurring opinion of Justice BRICKLEY.

LEVIN, J. The predicate of an assignment of error on the basis of a judge's ruling, adverse to the defendant, allowing the prosecution to introduce into evidence the defendant's prior conviction record to impeach the defendant's credibility is that but for the adverse ruling the defendant would have testified. I therefore agree with the majority that a defendant may, consistent with his Fifth Amendment privilege against self-incrimination, properly be required to testify to preserve the issue for appellate review.

I would, however, permit a defendant to preserve the issue for review by testifying either in the presence or outside the presence of the jury.

A defendant who believes that despite the judge's adverse ruling it is in his interest to provide the jury with his version, will testify and make the best of the judge's ruling permitting reference to his prior conviction record. A defendant who believes that the judge's adverse ruling will "doom his defense"[1] should, however, be able —as heretofore—to rely on the presumption of innocence and refrain from testifying in the presence of the jury and yet appeal from the judge's adverse ruling by providing for appellate review a separate record of his version made outside the presence of the jury.

[1] See McCormick, Evidence (3d ed), § 43, p 99, quoted in part IX.

The need on appellate review for a record of what the defendant would say if he were to testify would be as well served by a record made outside the presence of the jury as by a record made in the presence of the jury. The institutional needs of the justice system identified by the plurality can be fully served without precluding the defendant from appealing a ruling allowing reference to his prior conviction record if he exercises his constitutional right not to testify in the presence of the jury.

I

Permitting the defendant to testify outside the presence of the jury is consistent with the rationales underlying the United States Supreme Court's decision in *Luce v United States,* 469 US 38; 105 S Ct 460; 83 L Ed 2d 443 (1984).[2] There the Court said that without the defendant's testimony the court would be handicapped in weighing the prejudicial effect against the probative value of the prior conviction record, and in determining whether any error in allowing the admission of such evidence was harmless.

Those objectives would be accomplished as well by permitting a defendant to preserve the issue for appeal by testifying outside the presence of the jury as by requiring him to testify in the presence of the jury. Testimony outside the presence of the jury would come no later than when the defendant would last be permitted to exercise his right to testify, i.e., immediately before the defense rests. The setting would be the same: the judge would be

---

[2] While some states have followed *Luce,* a number have not. See *State v Whitehead,* 104 NJ 353; 517 A2d 373 (1986); *State v McClure,* 298 Or 336; 692 P2d 579 (1984); *State v Ford,* 381 NW2d 30 (Minn App, 1986); *People v Contreras,* 108 AD2d 627; 485 NYS2d 261 (1985); *Commonwealth v Richardson,* 347 Pa Super 564; 500 A2d 1200 (1985).

there, the prosecutor would be there, everyone else who otherwise would be in the courtroom would be there except the jury. The defendant would be subject to cross-examination at the conclusion of his testimony. The prosecution would have the opportunity of rebuttal, also outside the presence of the jury. The appellate court would have fundamentally the same record to review.

## II

In *Luce* the Court said that there was "no commitment by the petitioner that he would testify if the motion [to preclude the government from using a prior conviction to impeach him if he testified] were granted, nor did he make a proffer to the court as to what his testimony would be."[3] The *Luce* opinion continued:

> Requiring a defendant to make a proffer of testimony is no answer; his trial testimony could, for any number of reasons, differ from the proffer.[4]

The proposed alternative would not permit the defendant to preserve the issue by a mere proffer of proof and would require the defendant to testify either in the presence or outside the presence of the jury.

## III

The Court in *Luce* said that one "cannot assume that the adverse ruling motivated a defendant's decision not to testify" and that a defendant's commitment to testify if his motion is granted "is

---

[3] *Luce, supra* at 39.

[4] *Id.* at 41, n 5.

virtually risk free because of the difficulty of enforcing it."[5]

Those concerns are readily obviated. We could require a defendant who seeks to testify on a separate record to commit himself to testify in the presence of the jury if the judge, after he hears the defendant's testimony, rules in the defendant's favor on the admission of prior conviction record or if the prosecutor decides not to use "an arguably inadmissible prior conviction."[6] If the defendant were, in violation of such a commitment, to refuse to do so, his testimony and cross-examination outside the presence of the jury could be read to the jury.

If the defendant does testify, and his testimony in the presence of the jury differs from his testimony outside the presence of the jury, he could be impeached by his testimony outside the presence of the jury.

IV

*Luce* does not in terms require that the defendant testify in the presence of the jury. The Court said: "We hold that to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant *must testify.*"[7] (Emphasis supplied.) To be sure, the Court indicated elsewhere that Luce had failed to "testify at trial."[8] It is unclear whether testimony on a separate record during the trial would satisfy the *Luce* holding—binding on federal but not state courts—that the defendant "must testify."[9]

---

[5] *Id.* at 42.

[6] See n 7 and accompanying text.

[7] *Luce, supra* at 43.

[8] *Id.* at 39.

[9] Cf. *United States v Griffin,* 818 F2d 97, 105 (CA 1, 1987).

V

A trial judge is required by decisions of this Court to rule before the defendant testifies in the presence of the jury whether his prior conviction record will be admitted. This Court has said:

In order to decide his trial strategy, *including whether to testify in his own behalf,* the defendant was absolutely entitled to a ruling whether his record of prior convictions would be admitted against him. [*People v Hayes,* 410 Mich 422, 427; 301 NW2d 828 (1981). Emphasis supplied.]

Where the judge rules that a defendant's prior conviction record is admissible, and the defendant nevertheless chooses to testify, the judge might, during or upon the conclusion of the defendant's testimony—whether the defendant testifies in the presence or outside the presence of the jury—and any rebuttal by the prosecutor, reconsider his prior ruling that the defendant's prior conviction record will be admitted. The judge might then decide that the probative value of the defendant's testimony is such that he should be permitted to testify without incurring the prejudice that would result from admission of his prior conviction record.

Implicit in a judge's initial ruling adverse to the defendant is that the prosecutor indicated to the judge, when the question arose whether reference to prior conviction record would be permitted, that he desired to impeach the defendant, should he testify, by introducing his prior conviction record. The prosecutor, as well as the judge, might, after listening to the defendant's testimony, change his view concerning the importance of introducing evidence of the prior conviction record.

The Court in *Luce* said that when the defendant

does not testify, the reviewing court does not know whether the prosecutor would have actually sought to impeach with the prior conviction record. The Court hypothesized a government case so strong that the prosecutor "might elect not to use an arguably inadmissible prior conviction."[10] If the judge were to affirm his ruling against the defendant after the defendant testifies outside the presence of the jury, the prosecutor could indeed nevertheless change his view and elect not to use an "arguably inadmissible prior conviction."

I do not suggest that the judge or prosecutor should be obliged to reconsider their initial decisions. Rather, to the extent that providing an opportunity to revise an initial decision adverse to the defendant is a purpose of requiring the defendant to testify, this can be accommodated by permitting the defendant to testify outside the presence of the jury as well as by requiring him to testify in the presence of the jury. Any need or desirability of providing the judge with an opportunity to reconsider his initial ruling or the prosecutor an opportunity to reconsider his position, would be served under the proposed alternative permitting the defendant to testify outside the presence of the jury.[11]

VI

If the judge were to revise his ruling after hearing the defendant's testimony outside the presence of the jury or if the prosecutor elects not

[10] *Id.*

[11] The plurality opinion states that "*Luce* was not necessarily intended to benefit the trial judge in reaching the impeachment decision in the first instance. While there may be a peripheral benefit at the trial level as the judge may change the impeachment decision after hearing a defendant's testimony, that benefit is tangential to the fundamental purpose of providing meaningful appellate review." *Ante,* p 517.

to use an "arguably inadmissible prior conviction,"
the defendant would then, under the proposed
alternative, be called upon to repeat in the pres-
ence of the jury the testimony he has just given.
There would again be cross-examination and possi-
ble rebuttal, all repetitive. This repetition would
be time consuming and arguably a burden on the
judge, the prosecutor, and others who would sit
through the testimony a second time. This is in-
deed inefficient, but it is an inefficiency that re-
sults from the judge's initial ruling adverse to the
defendant and either his subsequent decision to
change his ruling after he hears the defendant's
testimony or reassessment by the prosecutor.

Relatively little repetition would actually occur
in practice. The judge will recognize that if he
changes his ruling, there will be repetition when
the defendant testifies in the presence of the jury.
The judge is therefore likely to revise his ruling, if
at all, after he has listened to the gist of the
defendant's testimony long before a full separate
record is completed.

VII

Because the defendant is entitled to a ruling by
the judge before he decides whether to testify in
the presence of the jury, *People v Hayes, supra,*
the possibility that the judge might change his
ruling after the defendant testifies—whether in
the presence or outside the presence of the jury—
is unavoidable.

Suppose that the judge changes his initial ruling
after the defendant has testified on direct and
cross-examination and has been impeached with
his prior conviction record in the presence of the
jury. The judge might then be obliged to offer the

defendant a mistrial[12] unless he is prepared to say, in advance of closing argument, instructions, and decision by the jury, that his earlier erroneous ruling was harmless.

If the judge offers the defendant a mistrial and he accepts the offer, the entire case must be tried again. That is far more inefficient than merely hearing the testimony of the defendant and any rebuttal witness a second time. Because of the burden on the prosecutor's and defendant's witnesses of a mistrial, requiring the defendant to testify in the presence of the jury might discourage the judge from revising his ruling in light of the defendant's testimony.

## VIII

The plurality predicts that were the proposed alternative adopted, a hearing outside the presence of the jury would be held in "every case." They argue that this would be inefficient and that the proposed alternative would fail to discourage defendants' motions to exclude past conviction records made solely to plant error requiring reversal in the event of a conviction.[13]

A well-advised defendant who—although he intends in the event of conviction to appeal an adverse ruling on the use of prior conviction record—intends to testify without regard to the judge's ruling permitting use of prior conviction record will eschew first testifying outside the presence of the jury to avoid providing the prosecutor an opportunity to rehearse his cross-examination

---

[12] When the prosecutor is permitted to introduce a prior conviction record, defense counsel frequently brings it out on direct examination in an effort to minimize the damage. The judge could caution defense counsel from doing so until the judge affirms his prior ruling after listening to defendant's testimony.

[13] *Ante,* p 521.

outside the presence of the jurors before he cross-examines in their presence.

Nevertheless, before allowing a defendant to testify outside the presence of the jury, the judge could and probably should generally require the defendant to waive testifying in the presence of the jury in the event the judge affirms his initial ruling adverse to the defendant on the use of prior conviction record and the prosecutor still desires to do so.

There thus would not be a separate record hearing in "every case." Only a defendant who waives his right to testify in the presence of the jury would be entitled to testify on a separate record outside the presence of the jury. There would be "inefficient" repetition of testimony only if the judge or prosecutor changes the initial decision or position. There could be no manipulation to plant error because a defendant's election not to testify could be made irrevocable, absolutely or in the discretion of the judge.

IX

The plurality states that the "fundamental purpose" of requiring the defendant to testify is "providing meaningful appellate review."[14] A separate record of a defendant's testimony, cross-examination, and any rebuttal made at a hearing outside the presence of the jury would provide as adequate a basis for determining whether any error in admitting the prior conviction record was harmless as would a record of such testimony made in the presence of the jury.

Under both the procedure mandated by the majority and the proposed alternative, the review-

[14] *Ante*, p 517.

ing court would decide whether the defendant's
testimony, unembarrassed by the erroneous admission
of the prior conviction record, might have
resulted in a jury finding of reasonable doubt and
hence acquittal.

When the defendant testifies in the presence of
the jury and is found by the appellate court to
have been erroneously impeached with his prior
conviction record, the reviewing court must *additionally* consider whether the admission of the
prior conviction record was so prejudicial that a
new trial is required. The reviewing court must
then consider the possible improper use by the
jury of the prior conviction record to convict the
defendant because he is a bad person. This improper
use of a prior conviction record by a jury is
indeed the reason for excluding reference to such a
record:

> The sharpest and most prejudicial impact of the
> practice of impeachment by conviction (as is true
> also of cross-examination as to misconduct, see
> § 42, above) is upon one particular type of witness,
> namely, the accused in a criminal case who elects
> to take the stand. If the accused is forced to admit
> that he has a "record" of past convictions, particularly
> if the convictions are for crimes similar to
> the one on trial, there is an obvious danger that
> *the jury, despite instructions, will give more heed
> to the past convictions as evidence that the accused
> is the kind of man who would commit the
> crime on charge, or even that he ought to be put
> away without too much concern with present guilt,
> than they will to the legitimate bearing of the past
> convictions on credibility.* The accused, who has a
> "record" but who thinks he has a defense to the
> present charge, is thus placed in a *grievous dilemma.*
> If he stays off the stand, his *silence alone
> will prompt the jury to believe him guilty.* If he
> elects to testify, *his "record" becomes provable to
> impeach him, and this again is likely to doom his*

*defense.* [McCormick, Evidence (3d ed), § 43, p 99. Emphasis supplied.]

This Court in *People v Hayes, supra,* p 426, said:

As Chief Justice, then Judge Burger [the author of the *Luce* opinion] recognized:

"A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the *inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.'* As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity." (Footnote omitted.) *Gordon v United States,* 127 US App DC 343, 347; 383 F2d 936, 940 (1967).

When judges are called upon to balance the "probative value" of a prior conviction for impeachment purposes against its "prejudicial effect," it is manifest that closer attention to possible prejudicial effect is necessary when the witness sought to be impeached is the defendant. [Emphasis supplied.]

If the defendant had testified outside the presence of the jury, the reviewing court would have no need to think about the prejudicial effect of the admission of the prior conviction record, and could focus its inquiry solely on whether the defendant's testimony, unembarrassed by the admission of the prior conviction record, might have created a reasonable doubt. The proposed alternative thus may

make appellate review less difficult for the reviewing court. The procedure mandated by the majority may make the reviewing court's task more complicated than the proposed alternative and thereby increase the risk of error by the reviewing court.

x

While requiring the defendant to testify provides the judge and the prosecutor with opportunities to avoid reversal on the basis of an erroneous ruling and facilitates determination by an appellate court of whether error is harmless, the majority, in addressing the institutional concerns identified in *Luce,* has mandated a procedure that may have an adverse effect on the defendant.

Heretofore, a defendant could, after an adverse ruling on the admission of a prior conviction record, decline to testify and obtain a new trial if the ruling was erroneous.

Under the procedure mandated by the majority, if the judge initially rules that a defendant's prior conviction record will be admitted, the defendant must, to preserve for appeal a claim that the judge's ruling was erroneous, relinquish the right, which he had until today, to refrain from testifying and to rely in lieu of testifying on his due-process rights to be presumed innocent and to be convicted only if the jury is convinced beyond a reasonable doubt.

The procedure mandated by the majority presents the defendant with a dilemma. If he testifies, the jury may ignore instructions on the limited use to be made of prior conviction record and convict him on the basis of his prior conviction record because he is a bad person. McCormick, *supra.* If he does not testify to avoid impeachment

by prior conviction and being convicted as a bad person because of his prior conviction, he runs the risk that the jury will ignore instructions and infer guilt from his failure to testify, but he cannot appeal the adverse ruling that caused him not to testify.

Under the procedure mandated by the majority, a defendant convinced that the admission of his prior conviction record "is likely to doom his defense" (McCormick, *supra*)—that the jury will not find a reasonable doubt if his prior conviction record is admitted—must nevertheless testify or forego challenging the ruling that would so "doom his defense."

Assuming that the institutional concerns identified in *Luce* should take priority, the "grievous dilemma," McCormick, *supra,* facing the defendant should be avoided if there is a means by which the institutional concerns can be accommodated without so tipping the scales against the defendant. The proposed alternative would accommodate the institutional concerns and yet permit a defendant, as before, to preserve his claim that the judge erred in ruling that the defendant's prior conviction record may be admitted in evidence if he testifies without waiving his constitutional right to refrain from testifying in the presence of the jury.

There is no need to present the defendant with this dilemma to accommodate the institutional needs that the procedure mandated by the majority seeks to address. The defendant should be permitted to preserve the issue by testifying outside the presence of the jury.

XI

In sum, considered in terms of the trial judge having an opportunity to revise his ruling and the

prosecutor an opportunity to change his position, permitting a defendant who, absent a revision of the judge's initial ruling or a change in the prosecutor's position, will not testify in the jury's presence, to preserve for appeal a challenge to the correctness of the judge's ruling by testifying outside the presence of the jury, would work just as well as or better (no risk of mistrial) than the procedure mandated by the majority.

The defendant may be required to waive his right to testify in the presence of the jury as a precondition to being allowed to make a separate record to preserve the issue for appeal. There will thus be occasion for repetition in the presence of the jury of separate record testimony only when the judge changes his initial ruling on the admission of prior conviction record or the prosecutor changes his position after they hear the defendant's separate record testimony.

Considered in terms of appellate review, the determination of the harmlessness of the error would be more readily made where the defendant testifies on a separate record because the appellate court would have no need to consider the effect of the erroneous admission of the prior conviction record (the possible improper use by the jury of a prior conviction record to convict the defendant because he is a bad person) and could confine its inquiry simply to whether the defendant's testimony might have created a reasonable doubt, a less complicated inquiry which must be made under either approach.

## XII

We concur in Justice Brickley's opinion except for the language of his opinion concurring in the language of the plurality opinion that fails to

recognize that a defendant who wishes to preserve for appeal an adverse ruling on the admission of a prior conviction record may do so by testifying outside the presence of the jury.

ARCHER, J., concurred with LEVIN, J.